1  Ronald Y. Rothstein (*pro hac vice* submitted)
   RRothste@winston.com
2  Sean Suber (*pro hac vice* submitted)
   SSuber@winston.com
3  WINSTON & STRAWN LLP
   35 West Wacker Drive
4  Chicago, IL 60601-9703
   Telephone: (312) 558-5600
5  Facsimile: (312) 558-5700

6  Alexandra C. Aurisch (SBN: 296525)
   AAurisch@winston.com
7  WINSTON & STRAWN LLP
   333 South Grand Avenue
8  Los Angeles, CA 90071-1543
   Telephone: (213) 615-1700
9  Facsimile: (213) 615-1750

10 Attorneys for Defendant
   The J. M. Smucker Company

11

12             **UNITED STATES DISTRICT COURT**

13            **NORTHERN DISTRICT OF CALIFORNIA**

14

15 MOLLY BROWN, as an individual, on behalf of      **Case No. 4:21-cv-06467-HSG**
   herself, the general public and those similarly
16 situated,                                          **DEFENDANT'S NOTICE OF MOTION
                                                       AND MOTION TO DISMISS CLASS
17               Plaintiff,                            ACTION COMPLAINT;
                                                       MEMORANDUM OF POINTS AND
18          v.                                         AUTHORITIES IN SUPPORT
                                                       THEREOF**
19
   THE J. M. SMUCKER COMPANY,                         Judge:   Haywood S. Gilliam, Jr.
20
                 Defendant.                            Date:    March 10, 2022
21                                                     Time:    2:00 p.m.
                                                       Place:   Courtroom 2
22
                                                       Complaint Filed: August 20, 2021
23

24

25

26

27

28

# NOTICE OF MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on March 10, 2022, at 2:00 p.m., this matter will be heard before the Honorable Haywood S. Gilliam, Jr., U.S. District Court Judge, in courtroom 2 of the above-entitled court, located at 1301 Clay Street, Oakland, California 94612. Defendant The J. M. Smucker Company moves the Court to dismiss the Class Action Complaint of Plaintiff Molly Brown with prejudice under Rules 8, 9(b), 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure for failure to meet heightened pleading requirements and failure to state a claim upon which relief can be granted. Defendant seeks dismissal with prejudice of all claims against it.

This motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the contents of the record and the Court file, and any further written or oral submissions that may be presented at or before the hearing on this motion.

Dated: October 26, 2021

**WINSTON & STRAWN LLP**

By: */s/ Alexandra Aurisch*

Alexandra C. Aurisch (SBN: 296525)
AAurisch@winston.com
WINSTON & STRAWN LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543
T: (213) 615-1700
F: (213) 615-1750

Ronald Y. Rothstein (*pro hac vice* submitted*)*
RRothste@winston.com
Sean H. Suber (*pro hac vice* submitted)
SSuber@winston.com
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601-9703
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

*Attorneys for Defendant*
*The J. M. Smucker Company*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

Page(s)

INTRODUCTION AND BACKGROUND ................................................................1

ARGUMENT.............................................................................................................4

I.      EQUITABLE RELIEF IS NOT AVAILABLE UNDER THE CLRA, FAL, OR UCL (COUNTS 1, 2, 4)........................................................................................4

II.     THE ECONOMIC LOSS DOCTRINE BARS FRAUD AND MISREPRESENTATION CLAIMS (COUNT 3)........................................................5

III.    THE CLAIM FOR UNJUST ENRICHMENT (COUNT 5) FAILS ...................6

IV.     THE REQUEST FOR PUNITIVE DAMAGES FAILS ....................................7

V.      PLAINTIFF'S CLAIMS ARE PREEMPTED BY FEDERAL LAW (RULE 12(B)(6))...............................................................................................................8

        A.      "Nutrient Content Claim." ..............................................................8

        B.      Calculation of Amount of Protein Per Serving................................9

        C.      Testing Requirement......................................................................12

VI.     PLAINTIFF'S CLRA NOTICE LETTER OMITTED CERTAIN CLAIMS AND THEREFORE PLAINTIFF CANNOT MAINTAIN ANY CLRA REMEDY FOR THOSE CLAIMS ................................................................................................12

        A.      Plaintiff's CLRA Notice Omitted "Content Testing" Claims Requiring Dismissal ......................................................................................12

        B.      Plaintiff's CLRA Notice Omitted Certain Products Requiring Dismissal ................13

VII.    PLAINTIFF LACKS STANDING (RULE 12(B)(1)).......................................14

        A.      Plaintiff Lacks Standing for Unpurchased Products.....................14

        B.      Plaintiff's supposed amino acid/protein "content testing" is insufficient to allege a particularized and concrete injury. ...............................16

        C.      Plaintiff lacks standing because she does not sufficiently allege that she paid a price premium traceable to Smucker's conduct. ..............................18

        D.      Plaintiff lacks standing for injunctive relief because she fails to allege an imminent risk of future harm.......................................................18

VIII.   PLAINTIFF'S COMPLAINT IS INADEQUATELY PLEADED. ....................20

IX.     THE COMPLAINT IS IMPLAUSIBLE AND FAILS ON THE MERITS (RULE 12(B)(6))..............................................................................................................21

        A.      The California Consumer Claims (Counts 1, 2, and 4) fail the reasonable consumer test as a matter of law.................................................22

        B.      The UCL Claim (Count 4) Fails Under the Three Established Tests.........................23

                1.      Plaintiff's UCL "Unfair Prong" Claim Lacks Merit .....................23
                2.      Plaintiff's UCL "Unlawful Prong" Claim Lacks Merit..................24
                3.      Plaintiff's UCL "Fraudulent Prong" Claim Lacks Merit................25

CONCLUSION ......................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allen v. Similasan Corp.*,
   2013 WL 5436648 (S.D. Cal. Sept. 27, 2013)................................................................13

*Alliance Mortg. Co. v. Rothwell*,
   10 Cal. 4th 1226 (Cal. 1995) .............................................................................................7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .....................................................................................................3, 21

*Astrium S.A.S. v. TRW, Inc.*,
   197 F. App'x 575 (9th Cir. 2006)......................................................................................6

*Bates v. United Parcel Serv., Inc.*,
   511 F.3d 974 (9th Cir. 2007) ...........................................................................................18

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................3, 20, 21

*Berni v. Barilla S.p.A.*,
   964 F.3d 141 (2d Cir. 2020) ............................................................................................18

*Boruta v. JPMorgan Chase Bank, N.A.*,
   2019 WL 4010367 (N.D. Cal. Aug. 26, 2019) ...............................................................23

*Brown v. Madison Reed, Inc.*,
   2021 WL 3861457 (N.D. Cal. Aug. 30, 2021) .................................................................1

*Buonasera v. Honest Co., Inc.*,
   208 F. Supp. 3d 555 (S.D.N.Y. 2016) ............................................................................20

*Carrea v. Dreyer's Grand Ice Cream, Inc.*,
   2011 WL 159380 (N.D. Cal. Jan. 10, 2011), *aff'd*, 475 F. App'x 113
   (9th Cir. 2012) ...........................................................................................................14, 15

*Cel–Tech Commc'ns, Inc. v. Los Angeles Cellular Telephone Co.*,
   20 Cal.4th 163 (1999)......................................................................................................24

*Chacanaca v. Quaker Oats Co.*,
   752 F. Supp. 2d 1111 (N.D. Cal. 2010)...................................................................8, 9, 10

*Choon's Design, LLC v. ContextLogic Inc.*,
   No. 19-CV-05300-HSG, 2020 WL 6891824 (N.D. Cal. Nov. 24, 2020)
   (Gilliam, Jr., J.)..................................................................................................................6

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ...................................................................................................18

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ...................................................................................................17

*Cleghorn v. Blue Shield of Cal.*,
    408 F.3d 1222 (9th Cir. 2005) .....................................................................................4

*Cnty. of Santa Clara v. Atl. Richfield Co.*,
    137 Cal. App. 4th 292 (2006) ......................................................................................6

*In re Coca-Cola Prod. Mktg. & Sales Pracs. Litig. (No. II)*,
    2021 WL 3878654 (9th Cir. Aug. 31, 2021) .............................................................20

*Colgate v. JUUL Labs, Inc.*,
    402 F. Supp. 3d 728 (N.D. Cal. 2019) .......................................................................21

*Coulombe v. Jolly*,
    447 F. Supp. 2d 1117 (C.D. Cal. 2006) .....................................................................16

*Davidson v. Kimberly–Clark Corp.*,
    889 F.3d 956 (9th Cir. 2018) ..........................................................................18, 19, 20

*Delarosa v. Boiron, Inc.*,
    275 F.R.D. 582 (C.D. Cal. 2011) .................................................................................8

*Dinan v. Sandisk LLC*,
    2019 WL 2327923 (N.D. Cal. May 31, 2019) ...........................................................22

*Durnford v. MusclePharm Corp.*,
    907 F.3d 595 (9th Cir. 2018) ................................................................................11, 12

*Durnford v. Musclepharm Corp.*,
    No. 15-CV-00413-HSG, 2015 WL 9258079 (N.D. Cal. Dec. 18, 2015),
    *rev'd on other grounds*, 907 F.3d 595 (9th Cir. 2018) ..........................................11, 12

*E & E Co. v. Kam Hing Enterprises, Inc.*,
    No. C-08-871 MMC, 2008 WL 4962991 (N.D. Cal. Nov. 19, 2008) .........................24

*Earth Island Inst. v. Wheeler*,
    464 F. Supp. 3d 1138 (N.D. Cal. 2020) .....................................................................21

*Ebner v. Fresh, Inc.*,
    838 F.3d 958 (9th Cir. 2016) ..........................................................................22, 24, 25

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
    751 F.3d 990 (9th Cir. 2014) .....................................................................................22

*Fahey v. Deoleo USA, Inc.*,
   2018 WL 5840664 (D.D.C. Nov. 8, 2018) ...................................................................... 17

*Fardella v. Downey Sav. & Loan Ass'n*,
   No. 00-4393, 2001 WL 492442 (N.D. Cal. May 9, 2001) ................................................ 24

*Faulk v. Sears Roebuck and Co.*,
   11- CV-02159 YGR, 2013 WL 1703378 (N.D. Cal. Apr. 19, 2013) .................................. 24

*Fernandez v. Atkins Nutritionals, Inc.*,
   2018 WL 280028 (S.D. Cal. Jan. 3, 2018) ...................................................................... 20

*Finkelstein v. AXA Equitable Life Ins. Co.*,
   325 F. Supp. 3d 1061 (N.D. Cal. 2018) ........................................................................... 21

*Found. v. Napolitano*,
   No. 17-CV-02255-MMC, 2018 WL 1947766 (N.D. Cal. Apr. 25, 2018) ........................... 7

*Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*,
   528 U.S. 167 (2000) ........................................................................................................ 4

*Gaminde v. Lang Pharma Nutrition, Inc.*,
   2019 WL 1338724 (N.D.N.Y. Mar. 25, 2019) ................................................................. 17

*Garadi v. Mars Wrigley Confectionery US, LLC*,
   2021 WL 2843137 (E.D.N.Y. July 6, 2021) ....................................................................... 1

*Gutierrez v. Kaiser Permanente*,
   No. 217-CV-00897-MCE GGH, 2018 WL 2412319 (E.D. Cal. May 29, 2018) ................... 7

*Heighley v. J.C. Penney Life Ins. Co.*,
   257 F. Supp. 2d 1241 (C.D. Cal. 2003) ............................................................................. 4

*Hodges v. Apple Inc.*,
   No. 13-CV-01128-WHO, 2013 WL 4393545 (N.D. Cal. Aug. 12, 2013) ......................... 23

*Huu Nguyen v. Nissan N. Am., Inc.*,
   2017 WL 1330602 (N.D. Cal. April 11, 2017) .................................................................... 4

*Khan v. CitiMortgage, Inc.*,
   975 F. Supp. 2d 1127 (E.D. Cal. 2013) ........................................................................... 24

*La Jolla Spa MD, Inc. v. Avidas Pharms., LLC*,
   No. 17-CV-1124-MMA (WVG) 2017 WL 4870374 (S.D. Cal., Oct. 27, 2017) ................... 7

*Lanovaz v. Twinings N. Am., Inc.*,
   726 F. App'x 590 (9th Cir. 2018) .................................................................................... 20

*Larsen v. Trader Joe's Co.*,
   2012 WL 5458396 (N.D. Cal. June 14, 2012) ................................................................. 15

*Lavie v. Procter & Gamble Co.*,
   105 Cal. App. 4th 496 (2003) ........................................................................................25

*Leadsinger, Inc. v. BMG Music Publ'g*,
   429 F. Supp. 2d 1190 (C.D. Cal. 2005) .........................................................................25

*Lee v. Kitchables Prods.*,
   No. 21-CV-01913-HSG, 2021 WL 3173253 (N.D. Cal. Jul. 27, 2021)
   (Gilliam, Jr., J.) ..............................................................................................................8

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) .................................................................................................16, 20

*Mandani v. Volkswagen Grp. of Am., Inc.*,
   2019 WL 652867 (N.D. Cal. Feb. 15, 2019) ...................................................................4

*Martin v. Tradewinds Beverage Co.*,
   No. CV-16-9249 PSG, 2017 WL 1712533 (C.D. Cal. Apr. 27, 2017)..............................7

*McDaniel v. Wells Fargo Invs., LLC*,
   2011 WL 2976784 (N.D. Cal. July 22, 2011), *aff'd*, 717 F.3d 668 (9th Cir. 2013).......................4

*Mendaros v. JPMorgan Chase Bank, N.A.*,
   No.16-CV-06092-HSG, 2017 WL 2352143 (N.D. Cal. May 31, 2017) ........................21

*Meyer v. Colavita USA Inc.*,
   2011 WL 13216980 (S.D. Fla. Sept. 13, 2011) .............................................................17

*Michael Lightner v. Medtronic Inc.*,
   No. CV20-10942MWF(PDx), 2021 WL 4731351 (C.D. Cal. May 10, 2021)................6

*Naimi v. Starbucks Corp.*,
   798 F. App'x 67 (9th Cir. 2019) ....................................................................................18

*Neubronner v. Milken*,
   6 F.3d 666 (9th Cir. 1993) ........................................................................................3, 21

*Orion Wine Imports*,
   412 F. Supp. 3d (E.D. Cal. 2019) ..................................................................................16

*Outboard Marine Corp. v. Super. Ct.*,
   52 Cal. App. 3d 30 (1975) .............................................................................................13

*Padilla v. WhiteWave Foods Co.*,
   2019 WL 4640399 (C.D. Cal. 2019) .............................................................................15

*Pels v. Keurig Dr. Pepper, Inc.*,
   2019 WL 5813422 (N.D. Cal. Nov. 7, 2019) ................................................................16

*Philips v. Ford Motor Co.*,
   2015 WL 4111448 (N.D. Cal. July 7, 2015) ................................................................4

*Porter v NBTY, Inc.*,
   2016 WL 6948379 (N.D. Ill. Nov. 28, 2016) ..............................................................12

*Portney v. CIBA Vision Corp.*,
   No. SA-CV-070854-AGM-LGX, 2009 WL 305488 (C.D. Cal. Feb. 6, 2009)..............................24

*Rahman v. Mott's LLP*,
   2018 WL 4585024 (N.D. Cal. Sept. 25, 2018) ......................................................19, 20

*Richards v. Safeway, Inc.*,
   2014 WL 12703716 (N.D. Cal. 2014) ........................................................................18

*Ridgway v. Phillips*,
   No. 18-cv-07822-HSG, 2020 WL 1288464 (N.D. Cal. March 18, 2020) ......................................5

*Robinson Helicopter Co. v. Dana Corp.*,
   129 Cal. Rptr. 2d 682 (Ct. App.), *review granted and opinion superseded sub
   nom. Robinson Helicopter Co. Inc. v. Dana Corp.*, 68 P.3d 344 (Cal. 2003), *and
   rev'd sub nom. Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 102 P.3d
   268 (2004)........................................................................................5, 6

*Robinson v. J. M. Smucker Co.*,
   No. 18-CV-04654-HSG, 2019 WL 2029069 (N.D. Cal. May 8, 2019)
   (Gilliam, Jr., J.) .............................................................................4, 7

*Ruszecki v. Nelson Bach USA Ltd.*
   2015 WL 6750980, at *6 (S.D. Cal. June 25, 2015) ....................................................13

*In re S.C. Johnson & Son, Inc. Windex Non-Toxic Litig.*,
   No. 20-CV-03184-HSG, 2021 WL 3191733 (N.D. Cal. July 28, 2021)
   (Gilliam, Jr., J.) .................................................................................6

*Salazar v. Honest Tea, Inc.*,
   74 F. Supp. 3d 1304 (E.D. Cal. 2014) ........................................................................12

*Simon v. E. Ky. Welfare Rights Org.*,
   426 U.S. 26 (1976) ........................................................................................16

*Sloan v. Gen. Motors LLC*,
   287 F. Supp. 3d 840 (N.D. Cal. 2018), *order clarified*, No. 16-CV-07244-EMC,
   2018 WL 1156607 (N.D. Cal. Mar. 5, 2018) ..............................................................23

*Snarr v. Cento Fine Foods Inc.*,
   No. 19-CV-02627-HSG, 2019 WL 7050149 (N.D. Cal. Dec. 23, 2019)
   (Gilliam, Jr., J.) .................................................................................7

*Soil Retention Prod., Inc. v. Brentwood Indus., Inc.*,
   521 F. Supp. 3d 929 (S.D. Cal. 2021) ........................................................5

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) ..................................................................4

*Sotelo v. Rawlings Sporting Goods Co., Inc.*,
   2019 WL 4392528 (C.D. Cal. May 8, 2019) .............................................13

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) ............................................................14, 16, 20

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998) ..............................................................................4

*Stewart v. Kodiak Cakes, LLC*,
   2021 WL 1698695 (S.D. Cal. Apr. 29, 2021) ...........................................19

*Tukay v. United Airlines, Inc.*,
   2015 WL 6694101 (N.D. Cal. Nov. 3, 2015) ...........................................21

*Ulrich v. Probalance, Inc.*,
   2017 WL 3581183 (N.D. Ill. Aug. 18, 2017) ...........................................12

*Vassigh v. Bai Brands LLC*,
   No. 14-CV-05127-HSG, 2015 WL 4238886 (N.D. Cal. July 13, 2015) ..........9

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ................................................................3

*Wallace v. ConAgra Foods, Inc.*,
   747 F.3d 1025 (8th Cir. 2014) ..............................................................17

*Weber v. Allergan, Inc.*,
   621 F. App'x 401 (9th Cir. 2015) ...........................................................22

*Wilson v. Frito-Lay N. Am., Inc.*,
   961 F. Supp. 2d 1134 (N.D. Cal. 2013) ....................................................3

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
   313 F. Supp. 3d 1113 (N.D. Cal. 2018) ....................................................7

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
   No. 16-MD-02752-LHK, 2017 WL 3727318 (N.D. Cal. Aug. 30, 2017)........23

*Zapata Fonseca v. Goya Foods Inc.*,
   No. 16-cv-02559-LHK, 2016 WL 4698942 (N.D. Cal. Sept. 8, 2016) ...........4

*Zeiger v. WellPet LLC*,
   No. 17-CV-04056, 2021 WL 756109 (N.D. Cal. Feb. 26, 2021) ...................5

**Statutes**

21 U.S.C. § 343-1(a)(4) ..............................................................................................8, 10

21 U.S.C. § 343(q)(1)(D) .................................................................................................11

21 U.S.C. § 343(r)(1)(A) ...................................................................................................9

Business and Professions Code § 17200 *et seq.* ...............................................................1

Business and Professions Code § 17500 *et seq.* ...............................................................1

Cal. Civ. Code § 1782(a) .................................................................................................12

Cal. Civ. Code § 3294(a) ...................................................................................................7

CLRA ...................................................................................................................... *passim*

CLRA. *Second* ...................................................................................................................2

Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* ......................................1

FAL ......................................................................................................................... *passim*

FDCA ................................................................................................................... 8, 11, 12

UCL ........................................................................................................................ *passim*

**Other Authorities**

9 C.F.R. §§ 317.309(c)(7) and (c)(7)(i) ...........................................................................10

21 C.F.R. § 101.9 (c)(7) .................................................................................9, 10, 11, 12

21 C.F.R. § 101.9(c)(7)(i) ..................................................................................... 8, 9, 10

21 C.F.R. § 101.9(c)(7)(i)–(ii) ................................................................................. 10, 11

(21 C.F.R. § 101.9(c)(7)(ii)) ..............................................................................................9

21 C.F.R. § 101.9(d) ........................................................................................................10

21 C.F.R. § 101.9(g) ........................................................................................................12

21 C.F.R. § 101.13(i)(3) ....................................................................................................9

21 C.F.R. § 101.13(b) ........................................................................................................9

81 Fed. Reg. 33742, 33868 (May 27, 2016) ...................................................................10

FED. R. CIV. P. 9(b) .....................................................................................................3, 21

Fed. R. Civ. P. 12(b)(1) ............................................................................................3, 4, 14

FED. R. CIV. P. 12(b)(6) ..................................................................................................21

Federal Rule 12(b)(6) ...............................................................................................3, 4, 8

Plaintiff's CLRA Notice Omitted "Content Testing"...........................................................12

Plaintiff's Complaint. *Ninth* .............................................................................................3

Rule 9(b)'s ........................................................................................................................7

U.S. Food & Drug Admin., *Label Claims for Conventional Foods and Dietary Supplements* (last updated June 19, 2018).............................................................................9

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION AND BACKGROUND

Plaintiff Molly Brown ("Plaintiff")—who is well known to the consumer class-action plaintiffs-attorneys' bar[1]—filed this Class Action Complaint ("Compl.") on behalf of herself and other California consumers against Defendant The J. M. Smucker Company ("Smucker"). She alleges that Smucker sold various peanut-related products ("Products") with allegedly false and misleading statements about protein content on the packaging. Compl. ¶ 15. The Complaint brings five causes of action: (1) a violation of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*; (2) false advertising under the Business and Professions Code § 17500 *et seq.* ("FAL"); (3) common law fraud, deceit, and/or misrepresentation; (4) unlawful, unfair, and fraudulent trade practices in violation of the Business and Professions Code § 17200 *et seq.* ("UCL"); and (5) unjust enrichment. Plaintiff seeks to represent "[a]ll persons in the State of California who purchased the Products between August 20, 2017 and the present." *Id.* ¶ 56.

The packaging of each Product includes on its front a statement indicating how many grams of protein are in a serving size. *Id.* ¶ 14. For example, the front of the peanut butter and strawberry Uncrustables box features the statement, "6 grams Protein." *Id.* ¶ 14 (graphic). Further, the back of each Product contains a "Nutrition Facts" section again providing the protein mass (e.g., 6 grams) and the percent daily value ("%DRV"). *Id.* ¶ 32; *infra* Section IV.

Plaintiff's Complaint centers around two different allegations, the first of which is that the number of grams of protein indicated on the Products' packaging is inaccurate as a *quantitative* measure of protein content (regardless of measuring technique used). Compl. ¶¶ 3, 15. Plaintiff claims that, for example, a serving of the peanut butter and strawberry Uncrustables "contains only 5 grams of protein" rather than the "6 grams Protein" indicated on the box. *Id.* ¶ 15. This allegation, according

---

[1] *See Brown v. Madison Reed, Inc.*, 2021 WL 3861457 (N.D. Cal. Aug. 30, 2021) (dismissing plaintiff's complaint alleging that hair-care company made false or misleading statements); *Garadi v. Mars Wrigley Confectionery US, LLC*, 2021 WL 2843137 (E.D.N.Y. July 6, 2021) (dismissing Plaintiffs Garadi and Brown's consolidated action alleging that defendant's "Vanilla Ice Cream" bars "are misleading because the ice cream is not flavored exclusively from vanilla beans").

to Plaintiff, is based on "amino acid content testing"[2]—a term for which **Plaintiff conspicuously provides absolutely no legal justification or factual details**, including on which of the Products any such testing was performed,[3] the frequency of any such testing, who performed the alleged testing, and whether it was performed on those Products purchased *by Plaintiff*. *Id.* ¶¶ 3, 4, 15, 37, 39.

Plaintiff's second (and equally incorrect) allegation is that the law also *requires* Smucker to calculate the protein *mass* using a qualitative measure, the Protein Digestibility Corrected Amino Acid ("PDCAAS") method, which encompasses the "digestibility of the protein," and that Smucker has not done so. *Id.* ¶¶ 25–26. When using this method, Plaintiff alleges, the Products are revealed to contain even fewer grams of protein—in the case of the peanut butter and strawberry Uncrustables, for example, 2.5 grams (as opposed to 6 grams). *Id.* ¶¶ 4, 15. In addition to misstating the law, **Plaintiff again fails to provide any details** to support the calculation. This is perhaps unsurprising, given that Plaintiff has disingenuously avoided pleading precisely those facts that could make sense of the calculation because those facts demonstrate Smucker's *compliance* with the statute. *Infra* Section IV.

Plaintiff requests both "[a]n order temporarily and permanently enjoining Defendant from continuing the [allegedly] unlawful, deceptive, fraudulent, and unfair business practices" and compensatory damages, statutory damages, punitive damages, treble damages, restitution, pre- and post-judgment interest, reasonable attorneys' fees and costs, and "such further relief as this Court may deem just and proper." *Id.* § Prayer ¶¶ A–J. However, Plaintiff's arguments fail for several reasons. *First*, equitable relief is not available under the CLRA (Count 1), FAL (Count 2), or UCL (Count 4), which is *fatal* to the FAL and UCL claims and eliminates equitable relief under the CLRA. *Second*, the economic loss doctrine bars recovery for fraud, deceit, and misrepresentation (Count 3). *Third*, the claim for unjust enrichment (Count 5) fails. *Fourth*, the request for punitive damages fails. *Fifth*, Plaintiff's claims are preempted by federal law. *Sixth*, all allegations and products omitted in Plaintiff's CLRA notice letter must be dismissed. *Seventh*, Plaintiff has failed to plead substantial similarity for

---

[2] The Complaint also appears to use the term "protein content testing" (Compl. ¶ 15) interchangeably with "amino acid content testing," thereby further evidencing the failure to plead with particularity. For some clarification, proteins consist of chains of amino acids. *Id.* ¶ 21.

[3] The Complaint only refers specifically, as an "example," to testing for Uncrustables – Peanut Butter & Strawberry. *Id.* ¶¶ 15, 37.

1   products she did not purchase. *Eighth*, the Primary Jurisdiction Doctrine bars Plaintiff's Complaint.

2   *Ninth*, Plaintiff lacks standing. *Tenth*, Plaintiff's claims are inadequately pleaded. *Eleventh*, the

3   Complaint is implausible, and each claim fails on the merits. As a result, Smucker respectfully requests

4   that this Court grant this motion in its entirety, with prejudice. Alternatively, Smucker requests a stay

5   of this action until the FDA has provided further guidance on these regulations.

6   ### LEGAL STANDARD

7        To survive a motion to dismiss under Federal Rule 12(b)(6), a plaintiff is required to allege

8   "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will

9   not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint should be dismissed if the

10  facts as pleaded do not state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S.

11  662, 663–64 (2009). This requires that the complaint make "more than an unadorned, the-defendant-

12  unlawfully-harmed-me accusation." *Id.* at 678. Rather, the complaint must demonstrate a "plausible"—

13  not merely "conceivable"—right to relief. *See Twombly*, 550 U.S. at 570. Where, as here, the complaint

14  lacks factual allegations sufficient to establish the elements of the causes of action asserted, Rule

15  12(b)(6) requires that the complaint be dismissed.

16       "Claims sounding in fraud are subject to the heightened pleading requirements of Federal Rule

17  of Civil Procedure 9(b), which requires that a plaintiff alleging fraud 'must state with particularity the

18  circumstances constituting fraud.'" *Wilson v. Frito-Lay N. Am., Inc.*, 961 F. Supp. 2d 1134, 1139 (N.D.

19  Cal. 2013). The heightened pleading requirements of Rule 9(b) are designed "to give defendants notice

20  of the particular misconduct which is alleged to constitute the fraud charged so that they can defend

21  against the charge and not just deny that they have done anything wrong." *Neubronner v. Milken*, 6

22  F.3d 666, 671 (9th Cir. 1993). "Parties must plead all averments of fraud with particularity, even if the

23  claims are not expressly labeled as 'fraud.'" *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–08

24  (9th Cir. 2003). To provide this required notice, "the complaint must specify such facts as the times,

25  dates, places, and benefits received, and other details of the alleged fraudulent activity." *Neubronner*,

26  6 F.3d at 672.

27       When a defendant makes a facial challenge for lack of subject-matter jurisdiction, Fed. R. Civ.

28  P. 12(b)(1), as Defendant does in this Motion, all material allegations in the complaint are assumed

– 3 –

true, and the court must determine whether lack of federal jurisdiction appears from the face of the complaint itself. *See id.* To satisfy Article III standing, a plaintiff must allege: (1) an injury in fact that is concrete and particularized, as well as actual and imminent; (2) that the injury is fairly traceable to the challenged action of the defendant; and (3) that it is likely (not merely speculative) that the injury will be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 180–81 (2000). A suit brought by a plaintiff without Article III standing is not a "case or controversy," and an Article III federal court therefore lacks subject-matter jurisdiction over the suit. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998).

Further, where a state-law claim is preempted by federal law, dismissal may be granted under Rule 12(b)(6). *E.g.*, *Cleghorn v. Blue Shield of Cal.*, 408 F.3d 1222, 1225 (9th Cir. 2005); *McDaniel v. Wells Fargo Invs., LLC*, 2011 WL 2976784, at *1 (N.D. Cal. July 22, 2011), *aff'd*, 717 F.3d 668 (9th Cir. 2013).

## ARGUMENT

### I.   Equitable Relief Is Not Available Under the CLRA, FAL, or UCL (Counts 1, 2, 4)

Plaintiff seeks equitable relief (restitution and injunctive relief) under the CLRA (Count 1), FAL (Count 2), and the UCL (Count 4). A "plaintiff seeking equitable relief in California must establish that there is no adequate remedy at law available." *Philips v. Ford Motor Co.*, 2015 WL 4111448, at *16 (N.D. Cal. July 7, 2015); *Heighley v. J.C. Penney Life Ins. Co.*, 257 F. Supp. 2d 1241, 1259–60 (C.D. Cal. 2003); *see Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (plaintiff must establish that she "lacks an adequate remedy at law before securing equitable" relief); *Mandani v. Volkswagen Grp. of Am., Inc.*, 2019 WL 652867, at *7 (N.D. Cal. Feb. 15, 2019). The UCL and FAL provide *only* for equitable relief requiring dismissal in their entirety. *Robinson v. J. M. Smucker Co.*, No. 18-CV-04654-HSG, 2019 WL 2029069, at *6 (N.D. Cal. May 8, 2019) (Gilliam, Jr., J.) (finding claim for damages was adequate remedy at law and dismissing claims for equitable relief under the UCL and FAL). Equitable relief is *also not available* under the CLRA. *Zapata Fonseca v. Goya Foods Inc.*, No. 16-cv-02559-LHK, 2016 WL 4698942, at *7 (N.D. Cal. Sept. 8, 2016) (dismissing claims for equitable relief under the CLRA, UCL, and FAL because plaintiff pled other claims that presented her an adequate remedy at law); *see also Huu Nguyen v. Nissan N. Am., Inc.*,

– 4 –

2017 WL 1330602, at *4 (N.D. Cal. April 11, 2017) (dismissing claim for injunctive relief under the CLRA where plaintiff had adequate remedy at law).

Here, Plaintiff also seeks compensatory and statutory damages, among other relief. Compl. § Prayer ¶¶ C, D. She also fails to allege any facts showing that she has no adequate remedy at law. Thus, her claims under the FAL and UCL should be dismissed in their entirety and her prayer for equitable relief under the CLRA should also be dismissed.

## II.    The Economic Loss Doctrine Bars Fraud and Misrepresentation Claims (Count 3).

Dismissal of Plaintiff's fraud, deceit, and misrepresentation claim[4] (Count 3) is also warranted because the economic loss doctrine bars purely economic harm. The economic loss rule provides: "[W]here a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only 'economic' losses." *Robinson Helicopter Co. v. Dana Corp.*, 129 Cal. Rptr. 2d 682, 697 (Ct. App.), *review granted and opinion superseded sub nom*. *Robinson Helicopter Co. Inc. v. Dana Corp.*, 68 P.3d 344 (Cal. 2003), *and rev'd sub nom. Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 102 P.3d 268 (2004); see also *Ridgway v. Phillips*, No. 18-cv-07822-HSG, 2020 WL 1288464, *8 (N.D. Cal. March 18, 2020) (Gilliam, Jr. J.). The majority of courts in California, including numerous more recent decisions, hold the economic loss doctrine bars fraud and misrepresentation claims. *See Soil Retention Prods., Inc. v. Brentwood Indus., Inc*., 521 F. Supp. 3d 929, 955–56 (S.D. Cal. 2021) (dismissing fraud because "to survive the economic loss rule's bar, a plaintiff pursuing a fraud claim for relief must plead that the fraud arises from the 'defendant's affirmative misrepresentations on which a plaintiff relies and which expose a plaintiff to liability for personal damages independent of the plaintiff's economic loss'" and dismissing negligent misrepresentation claim because plaintiff "allege[d] nothing more than the product it purchased . . . did not live up to the expectations that had been created by Defendant's advertising.") (collecting cases); *Zeiger v. WellPet LLC*, No. 17-CV-04056, 2021 WL 756109, at *23 (N.D. Cal. Feb. 26, 2021) (negligent misrepresentation claim over allegedly misleading advertisements

---

[4] Although the "common law fraud, deceit, and/or misrepresentation" claim does not clarify whether the misrepresentation is intentional or negligent, the ambiguity is of no import because both should be dismissed under the economic loss doctrine as discussed herein.

barred by economic loss doctrine). The Ninth Circuit has weighed in, finding that claims for fraud and misrepresentation are barred when they seek a purely economic recovery. *Astrium S.A.S. v. TRW, Inc*., 197 F. App'x 575, 577–78 (9th Cir. 2006) (California law bars fraud and negligent misrepresentation claims because, even if fraud were shown, there is no showing that people or property were placed at risk or that plaintiff was exposed to "personal damages" beyond economic losses) citing *Robinson Helicopter*; *Cnty. of Santa Clara v. Atl. Richfield Co*., 137 Cal. App. 4th 292, 328 (2006).

Plaintiff's theory of damages is that she "would not have purchased them, would have purchased less of them, or, at a very minimum, she would have paid less for the Products." Compl. ¶ 53. But this is an economic harm, not an injury to person or to property. Thus, Plaintiff's claims based on Defendant's protein statements must be dismissed as the alleged losses are purely economic.

## III.   The Claim For Unjust Enrichment (Count 5) Fails.

Unjust enrichment (Count 5) "is not a 'theory of recovery,'" but instead a form of restitution. *In re S.C. Johnson & Son, Inc. Windex Non-Toxic Litig.*, No. 20-CV-03184-HSG, 2021 WL 3191733, at *9–10 (N.D. Cal. July 28, 2021) (Gilliam, Jr., J.). However, "[l]ike the UCL claim, the unjust enrichment claim fails as a matter of law because the [complaint] does not allege the unavailability of an adequate legal remedy." *Michael Lightner v. Medtronic Inc*., No. CV20-10942MWF(PDx), 2021 WL 4731351, at *3 (C.D. Cal. May 10, 2021). While this Court has in some circumstances construed an unjust enrichment claim "as a quasi-contract claim seeking restitution," *see S.C. Johnson & Son*, 2021 WL 3191733, at *9-10, the Court should reject that approach here because the Complaint expressly frames it as an equitable claim: "Defendant has been unjustly enriched in retaining the revenues from Plaintiff's and Class members' purchases of the Products, which retention is unjust and **inequitable**." Compl. ¶ 106 (emphasis added). *See Medtronic Inc.*, 2021 WL 4731351, at *3 (rejecting argument that "the unjust enrichment claim should be treated as a quasi-contract claim rather than an equitable claim" where, as here, the Complaint "explicitly frame[d] the unjust enrichment claim as an equitable claim").

Moreover, Plaintiff's "derivative" unjust enrichment claim should be dismissed because, as explained herein, she has failed to plausibly allege the other causes of action in the Complaint. *Choon's Design, LLC v. ContextLogic Inc.*, No. 19-CV-05300-HSG, 2020 WL 6891824, at *5 n.4 (N.D. Cal.

1    Nov. 24, 2020) (Gilliam, Jr., J.).[5] For these reasons, the unjust enrichment claim should be dismissed.

2    **IV.    The Request for Punitive Damages Fails.**

3    The Complaint requests punitive damages under the CLRA (Compl. ¶ 70), and makes a general

4    averment seeking punitive damages where available (Compl. § Prayer ¶ E). California law provides

5    the governing substantive law for punitive damages, while the Federal Rules of Civil Procedure govern

6    the adequacy of the pleadings. *La Jolla Spa MD, Inc. v. Avidas Pharms., LLC*, No. 17-CV-1124-MMA

7    (WVG) 2017 WL 4870374, at *7 (S.D. Cal., Oct. 27, 2017). California federal courts require a

8    complaint seeking punitive damages to include facts sufficient to support such a claim. *See, e.g.*, *Young*

9    *Am.'s Found. v. Napolitano*, No. 17-CV-02255-MMC, 2018 WL 1947766, at *12 (N.D. Cal. Apr. 25,

10   2018) (dismissing a punitive damages claim for lack of factual support); *Gutierrez v. Kaiser*

11   *Permanente*, No. 217-CV-00897-MCE GGH, 2018 WL 2412319, at *5 (E.D. Cal. May 29, 2018)

12   (complaint seeking punitive damages under California law "must identify actual facts, as opposed to

13   conclusory allegations showing that the defendant acted [with oppression, fraud, or malice]," and

14   dismissing a complaint with only boilerplate allegations).

15   As an initial matter, it is settled law that punitive damages are not available under the UCL and

16   FAL. *Martin v. Tradewinds Beverage Co*., No. CV-16-9249 PSG (MRWX), 2017 WL 1712533, at

17   *11 (C.D. Cal. Apr. 27, 2017). Similarly, under California law, punitive damages are not recoverable

18   for negligent misrepresentations. *Alliance Mortg. Co. v. Rothwell*, 10 Cal. 4th 1226, 1241 (Cal. 1995)

19   (internal citations omitted).

20   Under the CLRA, punitive damages are limited to circumstances of "oppression, fraud, or

21   malice" that must be "proven by clear and convincing evidence." *Robinson*, 2019 WL 2029069, at *6;

22   Cal. Civ. Code § 3294(a). But "a company simply cannot commit willful and malicious conduct—only

23   an individual can." *Robinson*, 2019 WL 2029069, at *6. Instead, "the advance knowledge and

24   conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the

25   part of an officer, director, or managing agent of the corporation." *In re Yahoo! Inc. Customer Data*

26

27   ---

[5] Additionally, because Plaintiff's unjust enrichment claim is based on allegations of fraud, it is "subject to Rule 9(b)'s pleading requirements." *Snarr v. Cento Fine Foods Inc.*, No. 19-CV-02627-

28   HSG, 2019 WL 7050149, at *7 (N.D. Cal. Dec. 23, 2019) (Gilliam, Jr., J.).

*Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1147–48 (N.D. Cal. 2018). Here, Plaintiff fails to allege that any officer, director, or managing agent of Defendant acted with fraud, oppression, or malice.

Finally, because the Court should dismiss the claim for fraud, deceit, and misrepresentation based on the economic loss doctrine, the Court should dismiss punitive damages as to that claim for the same reason. *Lee v. Kitchables Prods.*, No. 21-CV-01913-HSG, 2021 WL 3173253, at *4 (N.D. Cal. Jul. 27, 2021) (Gilliam, Jr., J.) ("In the absence of a viable fraud allegation, the Court also finds that Plaintiff fails to adequately allege facts that would support a finding of 'oppression, fraud, or malice.'"). And in any event, punitive damages grounded in the fraud claim should be dismissed because the "elements of a common-law fraud claim appear to be identical to those of a CLRA claim for punitive damages …." *Delarosa v. Boiron, Inc.*, 275 F.R.D. 582, 589 (C.D. Cal. 2011).

## V.     Plaintiff's Claims Are Preempted By Federal Law (Rule 12(b)(6)).

Plaintiff's Complaint should be dismissed because her claims are preempted under 21 U.S.C. § 343-1(a)(4), as she is seeking to impose requirements under California law that are not identical to those imposed under federal law. *Cf. Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1121 (N.D. Cal. 2010). Specifically, Plaintiff alleges that Defendant is using a method other than PDCAAS to calculate the protein mass, is not compliant with the requirements of 21 C.F.R. § 101.9(c)(7)(i), and consequently, is also violating state laws that seek to enforce the federal counterpart. Compl. ¶ 28. The Complaint states that because Defendant allegedly made a "nutrient claim," Defendant was obligated to use the PDCAAS (qualitative) method to calculate the protein mass, which would result in an even lower mass (*e.g.*, 2.5 grams). The Complaint continues that the (quantitative) protein mass indicated is inaccurate (e.g., 5 grams instead of 6) as demonstrated by the "amino acid content testing." *Id.* ¶¶ 33, 37, 39, 40. However, **nothing** in the relevant statutes or regulations (specifically, 101.9(c)(7), 101.13(b), (c), (i), (n), (o), and (p)) **includes a requirement to calculate protein *mass* using the PDCAAS method.** These claims are flawed, incorrect and should be preempted under federal law.

### A.     "Nutrient Content Claim."

As an initial matter, the allegation is based on the false premise that "Defendant's protein representations on the front label are subject to analysis as a nutrient content claim." *Id.* ¶ 33. But they *are not nutrient content claims* under federal law. The FDCA defines a nutrient content claim as a

"claim … made in the label or labeling of the food which expressly or by implication—(A) *characterizes* the level of any nutrient." 21 U.S.C. § 343(r)(1)(A)[6] (emphasis added); *see also Vassigh v. Bai Brands LLC*, No. 14-CV-05127-HSG, 2015 WL 4238886, at *5 (N.D. Cal. July 13, 2015). "[C]haracteriz[ing] the level of nutrient in [a] product," however, means "using terms such as free, high, and low, or . . . compar[ing] the level of a nutrient in a food to that of another food, using terms such as more, reduced, and lite." U.S. Food & Drug Admin., *Label Claims for Conventional Foods and Dietary Supplements* (last updated June 19, 2018). "An accurate quantitative statement that does not otherwise 'characterize' the nutrient level," on the other hand, "may be used to describe the amount of a nutrient present." *Id.* Examples of such non-nutrient-content claims include statements such as "100 calories" and "5 grams of fat." 21 C.F.R. § 101.13(i)(3).

The statement "6 grams Protein" does not "characterize" the level of protein in the Products as "high" or "low," "more" or "less," and is therefore not a "nutrient content claim" as federal law defines it. Rather, the statement is a purely objective, quantitative statement about how much protein is in the Products. It is indistinguishable from "100 calories" or "5 grams of fat." *Id.* Thus, it is not "subject to analysis as a nutrient content claim." Compl. ¶ 33; *See Vassigh*, 2015 WL 4238886, at *5 ("Nutrient content claim requirements only apply where a product label characterizes the level (as opposed to existence) of a nutrient."). Because it is not a "nutrient content claim," Defendant is *not* obligated to adjust the amount of protein per serving (21 C.F.R. § 101.9(c)(7)(i)), calculated with "the amino acid score corrected for protein digestibility" (21 C.F.R. § 101.9(c)(7)(ii)), in other words, the PDCAAS method. *Cf.* Compl. ¶ 15.

**B.    Calculation of Amount of Protein Per Serving**

*Even if* the statements were "nutrient content claims," Plaintiff's allegations are still preempted because 21 C.F.R. § 101.9 (c)(7) specifies *which* value must be calculated using the PDCAAS method, and it is *not* the mass (grams), but rather only the %DRV. In maintaining (falsely) that PDCAAS must be used for the front-label protein content statement, Plaintiff is unquestionably seeking to impose requirements under California law that are not identical to federal law. *Chacanaca*, 752 F. Supp. 2d at

---

[6] *See also* 21 C.F.R. § 101.13(b).

1121. In fact, Plaintiff's suggestion that an "amino acid content test" should have been used, is equally

preempted, and Plaintiff has failed to plead *facts* supporting any requirement for the "amino acid" test.

Federal regulations specify only that the **%DRV** must be calculated using the PDCAAS method. 21 C.F.R. § 101.9(c)(7)(i)–(ii).[7] The regulations *do not* specify that PDCAAS must be used for any value other than the %DRV. *Id*. A fact Plaintiff misleadingly omits is that the Products all contain a %DRV in the Nutrition Facts panel that is calculated using the PDCAAS method. And Plaintiff does not contend that the protein statement on the Nutrition Facts panel of the Products is incorrect, because it is not. As a result, protein mass—the "amount per serving"—may be calculated using what is known as the "nitrogen" method. 21 C.F.R. § 101.9(c)(7) ("Protein content may be calculated on the basis of the factor 6.25 times the nitrogen content of the food as determined by the appropriate method of analysis as given in the "Official Methods of Analysis of the AOAC International…").[8] *Id*. The FDA itself has explained that these regulations "require" that protein content be measured according to the nitrogen method. FDA Final Rule, Food Labeling: Revision of the Nutrition and Supplement Facts Labels, 81 Fed. Reg. 33742, 33868 (May 27, 2016).[9]

Plaintiff's suggestion that *all* protein statements on the package must be based on the PDCAAS testing method is therefore not "identical" to federal requirements and thus preempted under 21 U.S.C. § 343-1(a)(4). *Cf. Chacanaca*, 752 F. Supp. 2d at 1121 ("[T]he Agency has not explicitly required that express content claims employ the rounded figure that appears in the nutrition box . . . . The Agency has urged that the use of *either* value functionally relays identical information. . . . [T]he plaintiffs'

---

[7] "A statement of the corrected amount of protein per serving, as determined in …(ii) of this section, calculated as a percentage of the … DRV for protein… and expressed as Percent of Daily Value may be placed on the label…" 21 C.F.R. § 101.9(c)(7)(i). Further, subsection **(c)(7)(ii) provides,** "The 'corrected amount of protein (gram) per serving' …is equal to the actual amount of protein (gram) per serving multiplied by the amino acid score corrected for protein digestibility."

[8] Indeed, 21 C.F.R. § 101.9(c)(7)(i) provides, "A statement of the corrected amount of protein per serving . . . shall be given if a protein claim is made." The use of the singular "a" indicates that federal law requires only *one* statement based on the PDCAAS test—specifically, the statement of %DRV on the right side of the nutrition facts label mandated by 21 C.F.R. § 101.9(d).

[9] In fact, the U.S. Department of Agriculture has the same regulations regarding protein labeling—requiring the nitrogen method for total protein per serving and using PDCAAS to calculate percent daily value. *See* 9 C.F.R. §§ 317.309(c)(7) & (c)(7)(i).

state law claims therefore seek to impose a non-identical burden. It is for this reason that plaintiffs'

claims relying on the use of this particular statement are preempted.").

In *Durnford v. Musclepharm Corp*., No. 15-CV-00413-HSG, 2015 WL 9258079, at *3–5 (N.D.

Cal. Dec. 18, 2015), *rev'd on other grounds*, 907 F.3d 595 (9th Cir. 2018), this Court ruled that:

> FDA regulations expressly provide that protein content may be calculated solely on the basis
> of nitrogen content… And Plaintiff does not allege that Defendant's Protein Content Claim is
> misleading because it was not calculated in conformity with § 101.9(c)(7).  In sum, Plaintiff
> seeks to hold Defendant liable for calculating protein content using a method prescribed by
> FDA regulations, in violation of the FDCA's express preemption provision.

The Ninth Circuit, agreed, holding "a claim that would permit a state to impose

requirements for the *measurement of protein* for purposes of the federal

mandated nutrition panel different from those permitted under the FDCA—is

preempted." *Durnford v. MusclePharm Corp*., 907 F.3d 595, 603 (9th Cir. 2018)

(emphasis added).[10] Here, Defendant does exactly as required in *Durnford*. The

Nutrition Facts panel containing the %DRV for *e.g.*, the peanut butter and

strawberry Uncrustables box (Comp. ¶ 14 (graphic)) is:



The Complaint omitted the packaging's Nutrition Facts panel precisely because it demonstrates

Defendant's compliance with applicable regulations. The regulations do not require use of the

PDCAAS method anywhere other than for the statement of the %DRV. And to the extent the protein

content expressed in grams is stated elsewhere on the label, Defendant remains in compliance with the

regulations for the very reason that it additionally discloses the %DRV per serving on the Nutrition

Facts panel. 21 C.F.R. § 101.9(c)(7)(i)–(ii).

Finally, the claim that digestibility must be taken into account when declaring grams of protein

on the label other than in the Nutrition Facts panel finds no support in the applicable regulations. *See*

Compl. ¶¶ 25-27, 39-40. First, the FDCA provides that food is deemed "misbranded" unless its

nutrition panel includes a statement of the product's "total protein." 21 U.S.C. § 343(q)(1)(D).

---

[10] The Ninth Circuit in *Durnford* only overruled the district court holding to the extent that "Durnford's
protein composition theory is not concerned with the total amount of protein in the Supplement; it is
concerned with the source of that protein." *Durnford v. MusclePharm Corp.*, 907 F.3d at 603. The
"source" of protein is not at issue in this case.

– 11 –

*Durnford*, 907 F.3d at 600. Second, the Ninth Circuit in *Durnford* held that "FDA regulations approve of the use of nitrogen as a proxy in complying with that requirement, 21 C.F.R. § 101.9(c)(7)." *Id.* at 602. As no distinction is present in this regulation between how protein content (as stated in grams) is declared whether made in the Nutrition Facts panel or elsewhere on the label, this Court must reject Plaintiff's wish that such a distinction exists. Thus, as in *Durnford*, Plaintiff's "theory is foreclosed by the FDCA." *Durnford*, 907 F.3d at 602.

Other courts have ruled similarly. *Ulrich v. Probalance, Inc*., 2017 WL 3581183, at *4 (N.D. Ill. Aug. 18, 2017) ("[T]he FDCA and its implementing regulations do not strictly require pure protein content claims . . . to be calculated according to the PDCAAS method"); *Porter v NBTY, Inc*., 2016 WL 6948379, at *5 (N.D. Ill. Nov. 28, 2016) ("This alternative to the nitrogen method is only required in the statement of percentage; it is not required for statements of absolute protein content.").

### C.     Testing Requirement

In addition to the lack of a PDCAAS requirement for calculating anything other than the %DRV, the Complaint is additionally – and in its entirety – preempted because when challenging the accuracy of a nutrient content claim, the plaintiff must implement a 12–sample test method required by 21 C.F.R. § 101.9(g). *Salazar v. Honest Tea, Inc*., 74 F. Supp. 3d 1304, 1313 (E.D. Cal. 2014). Here, Plaintiff's Complaint, as discussed above, does not reference the required 12-sample test. Consequently, the Complaint fails to state a claim for a violation of the FDCA's labeling requirements.

### VI.    Plaintiff's CLRA Notice Letter Omitted Certain Claims And Therefore Plaintiff Cannot Maintain Any CLRA Remedy for Those Claims.

### A.     Plaintiff's CLRA Notice Omitted "Content Testing" Claims Requiring Dismissal

In an action for damages under the CLRA, the consumer must "(1) [n]otify the person alleged to have employed or committed methods, acts, or practices declared unlawful by Section 1770 of the *particular alleged violations of Section 1770* [and] (2)[d]emand that the person correct, repair, replace, or otherwise rectify the goods or services alleged to be in violation of Section 1770" at least thirty days prior to the commencement of the action. *See* Cal. Civ. Code § 1782(a) (emphasis added). The purpose of the CLRA's notice requirement is "to provide and facilitate pre-complaint settlements of consumer actions wherever possible and to establish a limited period during which such settlement

may be accomplished." *Outboard Marine Corp. v. Super. Ct.*, 52 Cal. App. 3d 30, 41 (1975). Courts require strict compliance with the notice requirement to further this purpose. *See, e.g.*, *Allen v. Similasan Corp.*, 2013 WL 5436648, at *2–3 (S.D. Cal. Sept. 27, 2013); *Sotelo v. Rawlings Sporting Goods Co., Inc*., 2019 WL 4392528 (C.D. Cal. May 8, 2019). This extends not only to identifying the products at issue, but also the specific violations. For example, in *Ruszecki v. Nelson Bach USA Ltd.*, the court dismissed, with prejudice, "Ruszecki's damages claims under the CLRA insofar as they are based on products and alleged misrepresentations that were not specified in the CLRA letter." 2015 WL 6750980, at *6 (S.D. Cal. June 25, 2015). In *Ruszecki*, the court dismissed the alleged violations that were not cited in the notice letter, which had stated only that "[Nelson Bach's products] have no efficacy beyond that of a placebo," whereas the Complaint enumerated several allegedly false and misleading statements that went beyond issues of efficacy, such as "100% Natural," "All Natural Form of Healing," "Can Reduce Everyday Stress," "Fast Acting," "trusted around the world," "trusted for over 70 years," in close proximity to "Dr. Bach" and "Non–Habit Forming," and alleged violations based on lack of FDA approval. *Id.*

Here, Plaintiff failed to provide the required statutory notice for the allegations that, according to "content testing," the Products indicate an incorrect protein mass, *e.g.*, 6 grams instead of 5 grams. Compl. ¶ 39. The *only* allegation at issue in Plaintiff's notice letter was Plaintiff's contention that Smucker was required to use the PDCAAS method to calculate the protein mass and that it had not done so. (*See* Request for Judicial Notice, Ex. A.) As a result, these allegations must be dismissed with prejudice. Compl. ¶¶ 3, 4, 15, 27, 37, 39, 40.

### B.     Plaintiff's CLRA Notice Omitted Certain Products Requiring Dismissal

In Plaintiff's CLRA letter, she claims she purchased Smucker's Uncrustables Peanut Butter & Strawberry Sandwiches and then attaches a list of seven other Uncrustables and JIF peanut brand products that she did not purchase. (*See* Aurisch Decl. ¶¶ 4-5). However, the Complaint includes 37 products of which 29 are omitted in the CLRA letter. *Id.* (comparing CLRA letter Ex. A to Complaint Ex. B). Given Plaintiff's failure to include these 29 omitted products in her notice letter, all of her CLRA damages claims based on those allegations must be dismissed with prejudice. Compl. ¶¶ 1, 11, 13, 49, Ex. A, Ex. B. *Sotelo v. Rawlings,* 2019 WL 4392528, at *5 ("To the extent Plaintiff seeks to

– 13 –

1   bring claims for damages under the CLRA for products other than the [those specifically named in the

2   CLRA notice], those claims are dismissed with prejudice, because Plaintiff cannot recover for products

3   he did not expressly identify in the CLRA notice.")

4   **VII.   Plaintiff Lacks Standing (Rule 12(b)(1)).**

5          Plaintiff lacks Article III standing. To adequately plead standing, a plaintiff must "clearly . . .

6   allege facts demonstrating" that she has "(1) suffered an injury in fact, (2) that is fairly traceable to the

7   challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial

8   decision.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (internal quotations omitted). Plaintiff

9   has failed to clearly allege these facts.

10         **A.   Plaintiff Lacks Standing for Unpurchased Products.**

11         Plaintiff lacks standing to pursue claims for Products she did not purchase. *See, e.g., Carrea v.*

12  *Dreyer's Grand Ice Cream, Inc.*, 2011 WL 159380, at *3 (N.D. Cal. Jan. 10, 2011), *aff'd*, 475 F. App'x

13  113 (9th Cir. 2012) (dismissing for failure to allege a particularized injury as to unpurchased products).

14  In her declaration, Plaintiff attests to having purchased only 12 products: Smucker's Natural Chunky

15  Peanut Butter, Smucker's Organic Chunky Peanut Butter, Smucker's Organic Creamy Peanut Butter,

16  Simply JIF Creamy Peanut Butter, JIF Extra Crunchy Peanut Butter, Adams 100% Natural Crunchy

17  Peanut Butter, Adams Organic Crunch Peanut Butter, Adams Organic Creamy Peanut Butter, Laura

18  Scudder's Organic Nutty Peanut Butter (the "Smucker Peanut Butter Products") and Smucker's

19  Uncrustables Sandwiches in the Peanut Butter and Grape Jelly, Peanut Butter and Strawberry Jam, and

20  Peanut Butter and Honey flavors ("Uncrustables Peanut Butter Products"). Compl. Ex. A.

21         First, neither the Complaint nor Plaintiff's declaration attests that Plaintiff purchased any

22  Sahale Snacks. Sahale Snacks are a "Snack Mix" (specifically, "Creole Bean + Nut Snack Mix,"

23  "White Cheddar Black Pepper Bean + Nut Snack Mix," "Sea Salt Bean + Nut Snack Mix," and "Asian

24  Sesame Edamame Bean + Nut Snack Mix") (Compl. Ex. B)—an entirely different product from the

25  Smucker Peanut Butter Products or Uncrustables Peanut Butter Products. Further, she then defines the

26  "Products" at issue as also including several other types of Uncrustables Sandwiches that she did not

27  purchase (Compl. Ex. B) —many of which, based on the "variety" indicated in the Complaint, contain

28  meat, but not peanuts. These include the Uncrustables Roll-Ups (Turkey and Colby Jack); Uncrustables

Sandwich Roll-Ups (Uncured Ham and Cheese); Uncrustables Roll-Ups (Uncured Pepperoni); Uncrustables Bites (Uncured Pepperoni); Uncrustables Bites (Taco); and Uncrustables Bites (BBQ Chicken) (collectively, "Meat Uncrustables"). Compl. Ex. B. Yet central to her claims is the allegation that "animal-based" proteins have a "high biological value and [are] fully digestible by humans," whereas "plant proteins" such as peanuts are low-quality and not fully digestible proteins. *Id.* ¶¶ 26, 27.

Courts have adopted the "'substantial similarity' test" to determine whether a plaintiff can bring claims for products she did not buy. *Padilla v. WhiteWave Foods Co.,* 2019 WL 4640399, at \*9 *(C.D. Cal. 2019)*. Under this test, courts look at whether the plaintiff has alleged that "the challenged products are of the same kind, comprised of largely the same ingredients, and whether each of the challenged products bears the same alleged mislabeling." *Id.* (citation omitted). A plaintiff "must allege facts demonstrating sufficient similarities between the composition of . . . [the] other products Plaintiff seeks to include in the action[], such that the . . . analysis likely would be the same for both products." *Id.* (citation omitted).

As in *Padilla*, Plaintiff fails this test because the Complaint "does not adequately plead substantial similarity between the purchased and unpurchased products." *Id.* at \*10. Here, it does not allege any facts about the similarity of the products. There are no allegations about the ingredients, or "similarities as to the composition of the Products." *Id.* The Complaint "does not allege that the Products have similar 'density, weight, volume, size or shape.'" *Id.* The Complaint "lacks sufficient, specific allegations that address the ways in which the Products are alike." *Id.* Thus, the claims about the unbought products must be dismissed because the Complaint "does not allege facts that, if established, would be sufficient to show that the purchased and unpurchased products are substantially similar." *Id.; cf. Larsen v. Trader Joe's Co*., 2012 WL 5458396, at \*4–5 (N.D. Cal. June 14, 2012).

Thus, as Sahale Snacks are entirely different from the Smucker Peanut Butter Products or Uncrustables Peanut Butter Product varieties, they fail the substantial similarity test. Moreover, the Uncrustables that are not peanut-based (the Meat Uncrustables) also fail the substantial similarity test. Comp. Ex. B. All claims for those unpurchased products should be dismissed.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**B.      Plaintiff's supposed amino acid/protein "content testing" is insufficient to allege a particularized and concrete injury.**

"To establish an injury in fact, the plaintiff must show the defendant infringed on the plaintiff's legally protected interest in a 'concrete and particularized' manner that is 'actual or imminent, not conjectural or hypothetical.'" *Orion Wine Imports, LLC v. Applesmith,* 412 F. Supp. 3d 1174, 1180 (E.D. Cal. 2019) (quoting *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560 (1992)). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo, Inc.*, 136 S. Ct. at 1548. And particularization alone "is not sufficient," because "an injury in fact must also be 'concrete,'" which means it "must be '*de facto*'; that is, it must actually exist" and must be "'real,' and not 'abstract.'" *Id.* (citations omitted).

Plaintiff has not stated a particularized injury because she has not pleaded that any of the Products *she bought* actually contained less protein than the amount stated on the front label. The Complaint repeatedly relies on vague "amino acid content testing" and "protein content testing" and declares that, "[b]ased on" that testing, the "Products contain less protein than claimed." *E.g.*, Compl. ¶¶ 3, 4, 15, 27, 37, 39, 40. But not only does Plaintiff fail to allege that any Products *she bought* were tested, she pleads no facts indicating *when any* sort of supposed testing was performed, *where* it was performed, or *who* performed it or on *what* Products. Nor does the Complaint attach any further information about the testing—its results or a complete summary of them, documentation or correspondence from those who performed the tests, an explanation of how many tests were run on how many samples of what Products, or anything else to shed any light on what lies at the very foundation of Plaintiff's claims. In fact, the only detail Plaintiff provides is that *she* "[c]annot test whether or not the Products provide the amount of protein that is represented on the label." *Id.* ¶ 54. But none of Plaintiff's allegations leads to the inference that Plaintiff's own products she purchased were tested—indeed, the reasonable inference is that they were not.

As a result, Plaintiff's supposed injury is neither particularized nor concrete. *Pels v. Keurig Dr. Pepper, Inc.*, 2019 WL 5813422, at *5 (N.D. Cal. Nov. 7, 2019) ("[P]laintiff has failed to plead a particularized injury by failing to plead the water *he* purchased contained violative arsenic levels."). Certainly, this Court should not speculate that the results of mysterious testing are equally applicable

to whatever Products Plaintiff actually purchased. *See Coulombe v. Jolly*, 447 F. Supp. 2d 1117, 1121 (C.D. Cal. 2006) ("[U]nadorned speculation will not suffice to invoke the federal judicial power.") (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 44 (1976))). This is because "mere speculation" that an injury did or might occur "cannot satisfy the requirement that any injury in fact must be fairly traceable to" the defendant's alleged wrongdoing. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410–11 (2013).

In that respect, this case is much like *Gaminde v. Lang Pharma Nutrition, Inc.*, 2019 WL 1338724 (N.D.N.Y. Mar. 25, 2019). There, the plaintiff bought a bottle of CVS Krill Oil that claimed to contain 300mg of Omega-3 Krill Oil. *Id.* at *1. He sued, arguing that the bottle he purchased was mislabeled and did not contain 300mg of Omega-3 Krill Oil because "independent research . . . published in the *Journal of the Science of Food and Agriculture*" said "that two bottles of CVS Krill Oil contained approximately sixty percent of the purported 300mg of Omega-3 Krill Oil." *Id.* at *1, *2. But following the lead of the Eighth Circuit and several other courts,[11] the court held that the plaintiff lacked standing because it "is speculation to allege that because two CVS Krill Oil bottles in a USDA study were found to have less than the stated amount of Omega-3 Krill Oil, the bottle that Gaminde purchased must as well." *Id.* at *2. Key to that finding was the plaintiff's "fatal" "failure to allege that he tested *his* bottle of CVS Krill Oil." *Id.* (citations omitted) (emphasis added). The same is true here—yet this Court has even less to work with than the *Gaminde* court because it is left to speculate about every relevant detail of the alleged testing. Drawing reasonable inferences in Plaintiff's favor is one thing, but rank speculation is another.

Plaintiff does not allege—presumably because she *cannot*—that any Products *she bought* were tested and found to contain any less protein than the amount stated on the front of the package. This is

---

[11] *See Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030–31 (8th Cir. 2014) (the "allegations fail[ed] to show that any of the *particular packages* of Hebrew National beef *they personally purchased* contained non-kosher beef") (emphasis added); *Fahey v. Deoleo USA, Inc.*, 2018 WL 5840664, at *2 (D.D.C. Nov. 8, 2018) ("[T]he question is whether Fahey has alleged facts that support an inference that the particular bottle. . . he purchased . . . "); *Meyer v. Colavita USA Inc.*, 2011 WL 13216980, at *5 (S.D. Fla. Sept. 13, 2011) (dismissing claim where "[p]laintiffs d[id] not allege facts suggesting that the olive oil they purchased was not actually extra virgin olive oil;" instead "support[ed] their claims with speculation and unwarranted extrapolation" from [a] [s]tudy[]").

"fatal" to Plaintiff's case for the Complaint fails to allege a particularized and concrete injury.

### C.   Plaintiff lacks standing because she does not sufficiently allege that she paid a price premium traceable to Smucker's conduct.

Plaintiff also alleges that Smucker's "misrepresentations caused Plaintiff and members of the class to pay a price premium for the products." Compl. ¶ 5. But as explained above, Plaintiff has not pleaded facts to show that the Products she (or any member of the proposed class) purchased *actually included* less protein than the amount stated on the front label, and "bare recitation of the word 'premium' does not adequately allege a cognizable injury." *Naimi v. Starbucks Corp.*, 798 F. App'x 67, 70 (9th Cir. 2019). A plaintiff must allege "how much [she] would have paid for [the products] absent the alleged deception, whether [the manufacturer] (as opposed to a third-party distributor) was responsible for any overpayment, or any other details regarding the price premium." *Id.* Plaintiff here has not alleged any of these things, and her conclusory allegation about paying a "price premium" is simply not enough. For that reason, Plaintiff lacks standing.

### D.   Plaintiff lacks standing for injunctive relief because she fails to allege an imminent risk of future harm.

"To establish standing for injunctive relief, a plaintiff must allege not only that he has 'suffered or is threatened with concrete and particularized legal harm,' but also that there is 'a sufficient likelihood that he will again be wronged in a similar way.'" *Richards v. Safeway, Inc.*, 2014 WL 12703716, at *3 (N.D. Cal. 2014). "[P]ast wrongs do not in themselves amount to [a] real and immediate threat of injury necessary to make out a case or controversy." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (quoting *City of L.A. v. Lyons*, 461 U.S. 95, 103 (1983)).

Plaintiff seeks to "enjoin[] Defendant from continuing the unlawful, deceptive, fraudulent, and unfair business practices." Compl. § Prayer ¶ B. But this is a past harm.[12] Presumably in reliance on *Davidson v. Kimberly–Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018), the Complaint includes the throwaway allegations that Plaintiff "continues to desire to purchase" the Products; "will be unable to rely on Defendant's labels when shopping for protein products in the future absent an injunction;" and, "[i]f the Products are reformulated to provide the grams of protein that are represented on the label, . . .

---

[12] *See Berni v. Barilla S.p.A.*, 964 F.3d 141, 147 (2d Cir. 2020) ("past purchasers of a consumer product who claim to be deceived by that product's packaging . . . have, at most, alleged a past harm").

. would likely purchase them again in the future." Compl. ¶ 54. However, Plaintiff cannot avail herself of *Davidson*'s holding that "a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm." *Davidson*, 889 F.3d at 969.

**First**, there is no likelihood of future harm because Plaintiff is now aware of the alleged "true" protein content of the Products and therefore cannot be misled by the packaging in the future. Plaintiff alleges that "[a]t the time of each of her purchases of the Products, [she] did not know that the Products did not contain or provide the amount of protein represented on the label." Compl. ¶ 51. But she also alleges that testing results have since shown the Products to contain less protein than stated on the label. In other words, she now understands that the quantitative protein statements on the front of the packages do not reflect, for example, a qualitative measurement of protein actually digestible by the human body as determined by the PDCAAS method. So even if Plaintiff *were* misled by the packaging to believe the Products "contain or provide" more protein than they actually do, assuming the truth of her allegations, "[s]he is now aware that such a belief was unfounded." *Rahman v. Mott's LLP*, 2018 WL 4585024, at *3 (N.D. Cal. Sept. 25, 2018). Therefore, "there is no future risk that [P]laintiff will be misled by the" Products' labels. *Id.*

Any response by Plaintiff that her future "harm is her inability to rely on the validity of the information" about protein content stated on the Products' packaging "despite her desire to purchase" those Products as they are advertised—i.e., with the amount of protein stated on the front label, should be rejected. *Davidson*, 889 F.3d at 971. Her own allegations refute this contention. For example, she alleges the protein statements on the front of the label are misleading because they are not calculated using the PDCAAS method, which measures not just quantity, but quality and digestibility. *See* Compl. ¶ 15. Yet she also alleges that the Products "include a percent daily value for the protein in the [nutrition facts panel] using PDCAAS, a method that accounts for both the quantity and quality of protein in the product." Compl. ¶ 32. In other words, taking Plaintiff's allegations as true, she is now aware that the nutrition facts panel displays protein content as calculated by the PDCAAS method. Therefore, Plaintiff has "not establish[ed] Article III standing to assert [her] claims for injunctive relief" because

– 19 –

she "can check the nutrition facts . . . to assess if the [P]roducts still contain . . . insufficient protein." *Stewart v. Kodiak Cakes, LLC*, 2021 WL 1698695, at *10 (S.D. Cal. Apr. 29, 2021). "There is no longer any risk that [Plaintiff] will be misled into purchasing [Smucker's] products based on their labels' [protein content] claims." *Fernandez v. Atkins Nutritionals, Inc.*, 2018 WL 280028, at *15 (S.D. Cal. Jan. 3, 2018); *see also Rahman*, 2018 WL 4585024, at *3. *Davidson* is therefore inapposite.

*Second*, Plaintiff's allegation that she would "likely" buy the Products again in the future is insufficient to satisfy the imminent injury requirement. *See In re Coca-Cola Prod. Mktg. & Sales Pracs. Litig. (No. II)*, 2021 WL 3878654, at *2 (9th Cir. Aug. 31, 2021) ("None of the plaintiffs in this case allege a desire to purchase Coke as advertised … they have 'each stated that if Coke were properly labeled, they would consider purchasing it.' …[S]uch an abstract interest in compliance with labeling requirements is insufficient … the imminent injury requirement is not met by alleging that the plaintiffs would *consider* purchasing Coke.")(emphasis in original).[13] A "'some day' intention … [does] not support a finding of the 'actual or imminent' injury that" is required under Article III. *Lanovaz v. Twinings N. Am., Inc.*, 726 F. App'x 590, 591 (9th Cir. 2018) (quoting *Lujan*, 504 U.S. at 564). Moreover, Plaintiff's allegation that she would "likely" buy the Products if they were "reformulated" is a far cry from the *Davidson* plaintiff's unwavering assertion that she "would purchase truly flushable wipes manufactured by [the defendant] if it were possible." *Davidson*, 889 F.3d at 971.[14]

In short, Plaintiff's allegations amount to nothing but an "abstract interest in compliance with labeling requirements" that "is insufficient, standing alone, to establish Article III standing." *In re Coca-Cola*, 2021 WL 3878654, at *2 (citing *Spokeo*, 136 S. Ct. at 1550). What Plaintiff wants is an injunction to compel Smucker to confirm what Plaintiff says she already knows and can readily confirm with a quick look at the nutrition facts panel. That is insufficient to show an imminent risk of future harm. For all these reasons, Plaintiff lacks standing to pursue injunctive relief.

## VIII.   Plaintiff's Complaint Is Inadequately Pleaded.

A "plaintiff's obligation to provide the 'grounds' of his entitlement to relief requires more than

---

[13] To the extent *Davidson*, 889 F.3d at 969 is inconsistent with *In re Coca-Cola,* the latter is controlling.
[14] Plaintiff's allegations that she would "likely" buy the Products again if they were "reformulated" to conform with their labels are routinely rejected as insufficient to confer standing for injunctive relief. *See Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 564–65 (S.D.N.Y. 2016).

1  labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

2  *Twombly*, 550 U.S. at 555 (citation omitted). A well-pleaded complaint requires "more than an

3  unadorned, the-defendant-unlawfully-harmed-me accusation," *Iqbal*, 556 U.S. at 678, and "more than

4  a sheer possibility that a defendant has acted unlawfully," *Earth Island Inst. v. Wheeler*, 464 F. Supp.

5  3d 1138, 1141 (N.D. Cal. 2020) (citation omitted). And under California law, fraud requires: "(a)

6  misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or

7  'scienter'); (c) intent to defraud, *i.e.*, to induce reliance; (d) justifiable reliance; and (e) resulting

8  damages." *Mendaros v. JPMorgan Chase Bank, N.A.*, No.16-CV-06092-HSG, 2017 WL 2352143, at

9  *7 (N.D. Cal. May 31, 2017). State-law fraud claims are subject to the heightened pleading standard

10  of Rule 9(b). *Id.*

11  Under Rule 9(b), a party alleging fraud must "state with particularity the circumstances

12  constituting fraud or mistake, including the who, what, when, where, and how of the misconduct

13  charged." *Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728, 744 (N.D. Cal. 2019). This requirement

14  is designed "to give defendants notice of the particular misconduct which is alleged," and in so doing,

15  "the complaint must specify such facts as the times, dates, places, and benefits received, and other

16  details of the alleged fraudulent activity." *Neubronner*, 6 F.3d at 671–72.

17  Plaintiff fails to satisfy these basic requirements requiring dismissal. Her failure to allege any

18  facts about the supposed "protein content testing" (*e.g.*, Compl. ¶¶ 39, 40), has already been explained.

19  In particular, the allegation that Defendant is required to indicate protein content based on bio-usability

20  misreads the regulations and falls short of the "who, what, when, where, and how," *Colgate*, 402 F.

21  Supp. 3d at 744, or the "times, dates, [and] places," *Neubronner*, 6 F.3d at 671–72, required to allege

22  fraud. Finally, Plaintiff has not pleaded any *facts* demonstrating fraudulent intent.

23  ## IX.    The Complaint Is Implausible And Fails On The Merits (Rule 12(b)(6)).

24  Plaintiff's Complaint fails to state a claim on the merits. "Pursuant to *Twombly*, a plaintiff must

25  not merely allege conduct that is conceivable but must instead allege 'enough facts to state a claim to

26  relief that is plausible on its face.'" *Finkelstein v. AXA Equitable Life Ins. Co.*, 325 F. Supp. 3d 1061,

27  1065 (N.D. Cal. 2018) (quoting *Twombly*, 550 U.S. at 570). Although "[p]lausibility does not mean

28  probability," it does "require[] 'more than a sheer possibility that a defendant has acted

1    unlawfully.'" *Tukay v. United Airlines, Inc.*, 2015 WL 6694101, at *2 (N.D. Cal. Nov. 3, 2015)

2    (quoting *Iqbal*, 556 U.S. at 687).

3          Here, the Complaint must be dismissed because Plaintiff has failed to satisfy the reasonable-

4    consumer test and failed to allege facts showing "a probability 'that a significant portion of the general

5    consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'"

6    *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016). Plaintiff has simply not pleaded the kind of

7    factual allegations that "nudge [her] claims across the line from conceivable to plausible." *Weber v.*

8    *Allergan, Inc.*, 621 F. App'x 401, 402 (9th Cir. 2015) (citing *Eclectic Props. E., LLC v. Marcus &*

9    *Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014)).

10         **A.      The California Consumer Claims (Counts 1, 2, and 4) fail the reasonable
                     consumer test as a matter of law.**

11

12         To begin, Plaintiff's Complaint fails because Plaintiff does not plead how the alleged deceptive

13    marketing practices are *material* to *reasonable* consumers. Under California law, Plaintiff must satisfy

14    the "reasonable consumer" test as a substantive element of any consumer protection claims. *See Dinan*

15    *v. Sandisk LLC*, 2019 WL 2327923, at *4 (N.D. Cal. May 31, 2019) (holding that California claims

16    "are governed by the 'reasonable consumer' test" (citation omitted)).

17         Plaintiff fails to allege sufficient facts showing "a probability 'that a significant portion of the

18    general consuming public or of targeted consumers, acting reasonably in the circumstances, could be

19    misled.'" *Ebner*, 838 F.3d at 965 (citation omitted). That is because, as already explained, there is

20    nothing misleading about the Products. The front of the package states the number of grams of protein

21    that are contained in the Product. Plaintiff's claims are based on the premise that a reasonable consumer

22    would understand a quantitative measure of protein—"6 grams Protein"—to *really* reflect a qualitative

23    measure of high-quality protein digestible by the human body. Indeed, Plaintiff repeatedly contends

24    that the statements are misleading because they do not accurately reflect how much protein the

25    Products "provide" (Compl. ¶ 27)—*i.e.*, how much "will be digested and bioavailable to humans," (*id.*

26    ¶ 26). But these statements do not say or suggest anything about "providing" a certain amount of high-

27    quality "bio-usable" protein, and Plaintiff fails to allege how any reasonable consumer would think so.

28    That is implausible, and to the extent any consumers would think it, such consumers could readily

– 22 –

1    consult the Nutrition Facts panel on the label that would tell them everything they want to know.

2          To the extent Plaintiff alleges that "amino acid content testing" reveals the Products to contain

3    fewer grams of protein than stated on the package even "without correcting for digestibility," (*e.g., id.*

4    ¶ 27), that allegation is entirely unsupported and insufficient for the reasons explained above. Plaintiff

5    believes that the Products contain less protein than stated on the label because of supposed "protein

6    content testing" (*id.* ¶ 15), but this is inadequately pleaded and implausible because she fails to allege

7    any particulars about the purported testing, that her Products were tested, or that they were found to

8    contain less protein than advertised. *See Boruta v. JPMorgan Chase Bank, N.A.*, 2019 WL 4010367,

9    at *5 (N.D. Cal. Aug. 26, 2019).

10         **B.     The UCL Claim (Count 4) Fails Under the Three Established Tests**

11                  1.     Plaintiff's UCL "Unfair Prong" Claim Lacks Merit

12         California's UCL prohibits fraudulent, unfair, and unlawful business acts. *Sloan v. Gen. Motors*

13   *LLC*, 287 F. Supp. 3d 840, 865 (N.D. Cal. 2018), *order clarified*, No. 16-CV-07244-EMC, 2018 WL

14   1156607 (N.D. Cal. Mar. 5, 2018). California courts utilize three different tests to determine whether

15   a business practice is "unfair" under the UCL. *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No.

16   16-MD-02752-LHK, 2017 WL 3727318, at *23 (N.D. Cal. Aug. 30, 2017). Some courts have held that

17   for an act or practice to be unfair, "(1) the consumer injury must be substantial; (2) the injury must not

18   be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury

19   that consumers themselves could not reasonably have avoided." *Id.* This is the "FTC test." Other courts

20   use a "public policy" test, requiring plaintiffs to establish that the challenged practice violates public

21   policy as declared by specific—and applicable—statutory, constitutional, or regulatory provisions.

22   *Hodges*, No. 13-CV-01128-WHO, 2013 WL 4393545, at *5 (N.D. Cal. Aug. 12, 2013); *In re Yahoo!*,

23   2017 WL 3727318, at *23. Still other courts have held that the court must apply a "balancing test" that

24   defines unfair practices as those that are "immoral, unethical, unscrupulous, or substantially injurious

25   to consumers," where the utility of the practice does not outweigh the gravity of harm to its alleged

26   victim. *In re Yahoo!*, 2017 WL 3727318, at *23.

27         Under the FTC test, Plaintiff fails to show how any consumer injury resulting from two

28   different ways to measure protein is substantial. Plaintiff also fails to state a claim under the public

1    policy test because she has not identified a public policy that has been violated. *Hodges v. Apple Inc.*,

2    2013 WL 4393545, at *6; *In re Yahoo!*, 2017 WL 3727318, at *23. Plaintiff fails to state a claim under

3    the balancing test because the challenged practice is not "immoral, unethical, unscrupulous, [or] causes

4    injury to consumers which outweighs its benefits." *Fardella v. Downey Sav. & Loan Ass'n*, No. 00-

5    4393, 2001 WL 492442, at *3 (N.D. Cal. May 9, 2001). The allegation that the amount of protein

6    measured by a method allowed by federal law is somehow immoral, unethical, or unscrupulous is

7    simply not plausible. *See Ebner*, 838 F.3d at 965. And Plaintiff does not allege that she has suffered

8    any "substantially injurious" effects or harm from using the Product. *Id*. Accordingly, Plaintiff has

9    failed to plead facts sufficient to state a claim under the UCL "unfairness" prong.

10           2.    Plaintiff's UCL "Unlawful Prong" Claim Lacks Merit

11           Plaintiff cannot state a claim under the unlawful prong of the UCL unless she adequately alleges

12    a violation of another law or statute. "By proscribing 'any unlawful' business practice, [the UCL]

13    'borrows' violations of other law and treats them as unlawful practices that the unfair competition law

14    makes independently actionable." *Khan v. CitiMortgage, Inc.*, 975 F. Supp. 2d 1127, 1145 (E.D. Cal.

15    2013) (quoting *Cel–Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.,* 20 Cal.4th 163, 180, (1999)). A

16    "violation of another law is a predicate for stating a cause of action under the UCL's unlawful prong."

17    *E & E Co. v. Kam Hing Enters., Inc.*, No. C-08-871 MMC, 2008 WL 4962991, at *5 (N.D. Cal. Nov.

18    19, 2008) (internal citation and quotation omitted). Thus, "[i]f the borrowed violations of law or

19    predicate claims lack merit, then the unfair competition claim necessarily fails." *Portney v. CIBA Vision*

20    *Corp.*, No. SA-CV-070854-AGM-LGX, 2009 WL 305488, at *7 (C.D. Cal. Feb. 6, 2009). Plaintiff's

21    UCL claim fails under the unlawful prong because, as explained above, Plaintiff has not pleaded that

22    the protein calculation method violates any law or statute. And to the extent that Plaintiff seeks to use

23    alleged violations of the CLRA, FAL, or other statute (*see* Compl. ¶¶ 38, 93),[15] her reasoning is circular

24    and must be rejected. "The proof necessary to establish violation of the CLRA, including reliance,

25    causation and damages, is the *same proof* that would establish a violation of the unlawful prong of the

26    UCL." *Faulk v. Sears Roebuck and Co.*, 11- CV-02159 YGR, 2013 WL 1703378, at *10 (N.D. Cal.

27    ────────────────────

28    [15] Plaintiff alleges violation of the Sherman Law and FDA regulations but fails to include a cause of action specific to that law or how Plaintiff has standing to enforce those laws and regulations.

Apr. 19, 2013) (emphasis added). As set forth above, the Product does not violate the FAL or the CLRA. *See Portney*, 2009 WL 305488, at \*7 ("If the borrowed violations of law or predicate claims lack merit, then the unfair competition claim necessarily fails.").

### 3.      Plaintiff's UCL "Fraudulent Prong" Claim Lacks Merit

Plaintiff's claim under the UCL's fraudulent prong requires that she plausibly plead that reasonable consumers are likely to be deceived by the allegedly misleading conduct. *Ebner*, 838 F.3d at 967 (holding "design and packaging claims under these [FAL, CLRA, and UCL] statutes are governed by the reasonable consumer test"). This test requires more than a "mere possibility" that the packaging "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Id*. at 965 (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003)). "Rather, the reasonable consumer standard requires a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Id*. As analyzed above, Plaintiff has not pleaded facts supporting that a reasonable consumer is likely to be deceived.

### CONCLUSION

For these reasons, the Complaint should be dismissed in its entirety with prejudice because "any amendment would be futile." *See Leadsinger, Inc. v. BMG Music Publ'g*, 429 F. Supp. 2d 1190, 1197 (C.D. Cal. 2005).

Dated:  October 26, 2021                            **WINSTON & STRAWN LLP**

By:   */s/ Alexandra C. Aurisch*

Alexandra C. Aurisch (SBN: 296525)
AAurisch@winston.com
WINSTON & STRAWN LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Ronald Y. Rothstein (*pro hac vice* submitted)
RRothste@winston.com
Sean H. Suber (*pro hac vice* submitted)
SSuber@winston.com
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601-9703
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

*Attorneys for Defendant*
*The J. M. Smucker Company*