**GUTRIDE SAFIER LLP**
SETH A. SAFIER (State Bar No. 197427)
seth@gutridesafier.com
MARIE A. MCCRARY (State Bar No. 262670)
marie@gutridesafier.com
HAYLEY A. REYNOLDS (State Bar. No. 306427)
hayley@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT FOR THE

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOLLY BROWN, as an individual, on behalf of herself, the general public and those similarly situated, | Case No.: 3:21-CV-06467-HSG |
| Plaintiff, | **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |
| v. | Judge: Haywood S. Gilliam, Jr. |
| THE J.M. SMUCKER COMPANY, | Hearing Date: March 10, 2022 Time: 2:00 p.m. Place: Courtroom 2 |
| Defendant. | |

1

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND .................................................................................................. 2

        A.      Smucker's Nitrogen-Based Protein Claim is Misleading. ....................................... 2

        B.      Smucker's Own PDCAAS Testing Confirms Plaintiff's Allegations..................... 3

        C.      FDA Regulations Govern Front and Back Labels Differently................................. 4

III.    ARGUMENT ...................................................................................................... 4

        A.      Plaintiff's claim that Smucker's front label claim is misleading parallels FDA
                regulations. ................................................................................................................. 4
                1.      Smucker's front label claims are nutrient content claims. ........................... 6
                2.      The FDA does not expressly authorize Smucker's front label claims. ........ 7
                        a.      Smucker's back panel regulations do not authorize its front label
                                claim.................................................................................................. 7
                        b.      Smucker's arguments related to Plaintiff's proposed forms of
                                compliance are wrong and miss the point. ...................................... 10
                3.      12-sample testing is unnecessary at the pleading stage. ............................ 12

        B.      Plaintiff May Plead Both Legal and Equitable Claims at This Stage. .................... 13

        C.      The Economic Loss Doctrine Does Not Bar Fraud and Misrepresentation
                Claims ....................................................................................................................... 15

        D.      Plaintiff States a Claim for Unjust Enrichment ..................................................... 16

        E.      Plaintiff's CLRA Letter Provided Sufficient Notice............................................. 17

        F.      Plaintiff Has Standing Under Rule 12(b)(1) .......................................................... 19
                1.      The Products at Issue Are Substantially Similar...................................... 19
                2.      Plaintiff Alleges She Paid a Price Premium and Therefore Suffered a
                        Particularized Injury.................................................................................... 20

        G.      Plaintiff Has Standing to Seek an Injunction. ....................................................... 21

        H.      Plaintiff's Complaint Satisfies Rule 9(b). ............................................................. 23

        I.      Plaintiff Alleges a Reasonable Consumer Would Be Misled. ............................... 23

        J.      Plaintiff Has Alleged a Claim Under the UCL. ..................................................... 25

IV.     PLAINTIFF REQUESTS LEAVE TO AMEND IF NECESSARY .................................... 25

V.      CONCLUSION.................................................................................................. 25

i

1

## <u>TABLE OF AUTHORITIES</u>

2

### <u>Cases</u>

3

*Am. Life Ins. Co. v. Stewart*, 300 U.S. 203 (1937) .......................................................................... 15

4

*Astiana v. Ben & Jerry's Homemade, Inc.*, No. C 10-4387 PJH, 2011 WL 2111796 (N.D. Cal.

5

    May 26, 2011) .................................................................................................................... 23

6

*Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. C-11-2910-EMC, 2012 U.S. Dist. LEXIS 101371

7

    (N.D. Cal. July 20, 2012) .............................................................................................. 19, 20

8

*Bates v. DowAgrosciences LLC*, 544 U.S. 431 (2005) .................................................................... 11

9

*Bruton v. Gerber Products Co.*, 2014 WL 172111 (N.D. Cal. Jan. 15, 2014) .............................. 23

10

*Clay v. Cytosport, Inc.*, 2015 U.S. Dist. LEXIS 110447 (S.D. Cal. Aug. 19, 2015) .................... 13

11

*Colgan v. Leatherman Tool Group, Inc.* 135 Cal.App.4th 663 (2006) ......................................... 23

12

*Deras v. Volkswagen Grp. of Am., Inc.*, No. 17-cv-05452-JST, 2018 U.S. Dist. LEXIS 83553

13

    (N.D. Cal. May 17, 2018) ...................................................................................................... 15

14

*DeSoto v. Yellow Freight Sys.*, 957 F.2d 655 (9th Cir. 1992) ....................................................... 25

15

*Durnford v. MusclePharm Corp.*, 907 F. 3d 595 (9th Cir. 2018) .................................................... 9

16

*Gregorio v. Clorox Co.*, No. 17-cv-03824-PJH, 2018 U.S. Dist. LEXIS 19542 (N.D. Cal. Feb. 6,

17

    2018) .................................................................................................................................... 21

18

*Gross v. Vilore Foods Co.*, No. 20cv0894 DMS (JLB), 2020 U.S. Dist. LEXIS 200913 (S.D. Cal.

19

    Oct. 28, 2020) ...................................................................................................................... 15

*Gubala v. CVS Pharmacy, Inc.*, 2016 U.S. Dist. LEXIS 32759 (N.D. Ill. Mar. 15, 2016) ............. 1

20

*Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188 (N.D. Cal. 2014) ..................................... 23

21

*Hanna v. Plumer*, 380 U.S. 460 (1965) ........................................................................................ 14

22

*In re ConAgra Foods, Inc.*, 908 F.Supp.2d 1090 (C.D. Cal. 2012) .............................................. 23

23

*In re Juul Labs, Inc., Mktg., Sales Practices, & Prods. Liab. Litig.* ("*In re JUUL*"), No. 19-md-

24

    02913-WHO, 2020 U.S. Dist. LEXIS 197766 (N.D. Cal. Oct. 23, 2020) ............................... 14

25

*Lily v. ConAgra Foods, Inc.*, 743 F. 3d 662 (9th Cir. 2014) ............................................................ 4

26

*LSH Co. v. Transamerica Life Ins. Co.*, No. 2:18-CV-09711-SJO-KS, 2019 U.S. Dist. LEXIS

27

    151847 (C.D. Cal. Mar. 20, 2019) ........................................................................................ 15

28

*Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861 (N.D. Cal. 2012) ............................... 19

*Minor v. Baker Mills, Inc.*, No. 20-cv-0290, (N.D. Cal. Nov. 12, 2020) .......................................... 1

*Mohamed v. Kellogg Co.*, No. 14-CV-2449 L (MDD), 2015 WL 12469107 (S.D. Cal. Aug. 19, 2015) ............................................................................................................................................. 24

*Naeyaert v. Kimberly-Clark Corp.*, No. ED CV17-00950 JAK (JPRx), 2018 U.S. Dist. LEXIS 227121 (C.D. Cal. Sep. 28, 2018) .......................................................................................... 15

*Nationwide Biweekly Admin., Inc. v. Superior Court*, 462 P.3d 461 (Cal. 2020) .......................... 15

*Porter v. NBTY, Inc.* (*Porter I*) 2016 U.S. Dist. LEXIS 163352 (N.D. Ill. Nov. 28, 2016) .... 1, 5, 6

*Porter v. NBTY, Inc. (Porter II)*, No. 15 CV 11459, 2019 U.S. Dist. LEXIS 190495 (N.D. Ill. Nov. 4, 2019) .......................................................................................................................... 5, 12

*Sagastume v. Psychemedics Corp.*, No. CV 20-6624 DSF (GJSx), 2020 U.S. Dist. LEXIS 247754 (C.D. Cal. Nov. 30, 2020) ...................................................................................................... 14

*Salazar v. Honest Tea, Inc.*, 74 F. Supp. 3d 1304 (E.D. Cal. 2014) .............................................. 13

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393 (9th Cir. 1986) ..................... 25

*Shay v. Apple Inc.*, No. 20cv1629-GPC(BLM), 2021 U.S. Dist. LEXIS 4033 (S.D. Cal. Jan. 8, 2021) ........................................................................................................................................ 14

*Smith v. Allmax Nutrition, Inc.*, 2015 U.S. Dist. LEXIS 171897 (E.D. Cal. Dec. 23, 2015)......... 13

*Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020) ................................................ 13

*Summit Estate, Inc. v. United Healthcare Ins. Co.*, No. 4:19-cv-06724 YGR, 2020 U.S. Dist. LEXIS 166721 (N.D. Cal. Sep. 10, 2020) ................................................................................ 15

*Ulrich v. Probalance, Inc.*, 2017 U.S. Dist. LEXIS 132202 (N.D. Ill. Aug. 18, 2017)......... 1, 5, 12

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) .................................................... 23

*Victor v. R.C. Bigelow, Inc.*, No. 13-cv-02976-WHO, 2014 U.S. Dist. LEXIS 34550 (N.D. Cal. Mar. 14, 2014)......................................................................................................................... 19

*Williams v. Gerber Prods. Co.*, 552 F. 3d 934 (9th Cir. 2008)............................................... 10, 23

**Regulations**

21 C.F.R. § 101.9 ............................................................................................................................ 9

21 C.F.R. § 101.13 ..................................................................................................................... 4, 6

58 Fed. Reg. 2079 ........................................................................................................................... 9

iii

1

## I.     INTRODUCTION

Defendant Smucker ("Smucker") prominently advertises "6g Protein" on the front of its Smucker's Peanut Butter & Strawberry Uncrustables Sandwiches. In reality, the product provides only 2.5 grams of protein nutritionally, i.e., *an overstatement of approximately 140%*, because humans cannot fully digest the low-quality protein sources in Defendant's Products that are deficient in certain amino acids essential to human protein synthesis. FDA regulations specifically prohibit manufacturers from making "a statement about the *amount or percentage* of a nutrient" on the front label of a product if that statement is "false or misleading *in any respect*." 21 C.F.R. § 101.13(i)(3) (emphasis added). By advertising 6 grams of protein when the product provides nutritionally only 2.5 grams, for example, Defendant misleads consumers about the amount of protein they will actually receive from consuming the product, which violates both state and federal law. Because Plaintiff's state law claims directly parallel federal requirements, her claims are not preempted. *Every court* to address this specific issue has so held. *E.g., Porter v. NBTY, Inc.* (*Porter I*), 2016 U.S. Dist. LEXIS 163352, at *17-18 (N.D. Ill. Nov. 28, 2016); *Ulrich v. Probalance, Inc.*, 2017 U.S. Dist. LEXIS 132202, at *11-12 (N.D. Ill. Aug. 18, 2017); *Gubala v. CVS Pharmacy, Inc.,* 2016 U.S. Dist. LEXIS 32759, at *40 (N.D. Ill. Mar. 15, 2016); *Minor v. Baker Mills, Inc*., No. 20-cv-0290, ECF 35, p. 6 (N.D. Cal. Nov. 12, 2020).

Despite this case law, Smucker's main basis for dismissal is preemption. It argues that section 101.13(i)(3) does not apply because a quantitative protein statement on the front label is not a nutrient content claim. However, Smucker's argument runs afoul of the plain language of section 101.13(c), which provides that when information is copied from the back nutrition facts panel (NFP) and stated elsewhere on the label (like protein quantity) it is a nutrient content claim. Multiple courts have, in fact, rejected this exact argument. Smucker next creates a false narrative by relying on regulations and case law that pertain to what it can state on the NFP of its products. But the Ninth Circuit explicitly held that "a requirement to state certain facts in the nutrition label is not a license to make that statement elsewhere on the product" because different areas of the packaging are subject to different sets of regulations. *Id*. at 767 (emphasis in original, quoting *Reid v. Johnson & Johnson*, 780 F.3d 952, 960 (9th Cir. 2015)). In particular, FDA regulations subject

front-label claims to heightened scrutiny because they capture consumers' attention and induce them to purchase products, including prohibiting misleading statements about the amount of a nutrient such as protein. Smucker nevertheless asks this Court to bless its front label claim because the regulations allow it in the NFP—a path expressly foreclosed by the Ninth Circuit. In a last-ditch effort, Smucker argues that an FDA standard of 12-sample testing preempts Plaintiff's claims despite the fact that the testing is not required at the pleading stage or otherwise. Given the flaws in its arguments, Smucker has not met its burden to establish preemption.

The remainder of Smucker's arguments represent a kitchen sink approach wherein it throws legal standards against the wall and hopes one sticks. Most of these remaining arguments contain little analysis and rely on a woeful misrepresentation of both law and facts. In summary, Plaintiff pleads that Smucker made misleading front label protein claims on which she relied, causing her to overpay for the Products. She both meets the heightened 9(b) pleading standard and alleges a particularized economic injury. Because she sufficiently alleges her fraud and unlawful claims, she also has adequately pled claims under the UCL.

Plaintiff outlined these claims in a letter sent more than 30-days prior to filing this suit, and therefore met her notice obligations under the CLRA. And, because the remedy for the claims based on the Products she purchased mirror those claims on the other Products at issue, the Products are substantially similar and Plaintiff's claims can go forward as to all Products. Finally, Plaintiff plausibly alleged that she cannot rely on Smucker's front label protein claims in the future, and Smucker cannot escape any relief, much less injunctive relief, based on its back label statements.

## II.     BACKGROUND

### A.     Smucker's Nitrogen-Based Protein Claim Is Misleading.

Nitrogen testing estimates protein quantity by multiplying the nitrogen content of a food by an average conversion factor. Nitrogen testing does not account in any way for protein quality— i.e., how much of the estimated protein a human can actually use. 21 C.F.R. § 101.9(c)(7); *see also Porter I*, 2016 U.S. Dist. LEXIS 163352, *16 ("the nitrogen method is not the most accurate way to describe protein content.").

The Protein Digestibility Corrected Amino Acid Score ("PDCAAS"), is a measure of protein quality—i.e., the amount of the total protein that can actually be used as protein in the human body. ECF 1 at ¶¶ 24-27. It does this by first measuring the amount and types of amino acids, and then applying a percent digestibility. *Id.* The first step is critical because a human's body requires nine essential amino acids to synthesize protein from any food. *Id*. at ¶ 26. Protein synthesis shuts down after the body uses up the least prevalent essential amino acid, with the remaining amino acids degrading mostly into waste. *Id*. at ¶ 23. The second step is also important for determining the amount of protein useable by the human body because not all proteins are fully digestible by humans—this is especially true of proteins derived from plants—and the undigestible portion of the protein content is similarly unavailable for human protein synthesis. *Id.* at ¶¶ 24-25. The percent digestibility captures this. *Id.* PDCAAS combines these results into a discount factor (e.g., 0.5 or 0.6) that, when multiplied by protein quantity in grams, shows how much protein a product actually provides for human nutritional purposes, also in grams. *Id*. at ¶ 26. FDA regulations refer to this as the "corrected amount of protein (gram) per serving." *See* 21 C.F.R. § 101.9(c)(7)(i)-(ii).

**B.      Smucker's Own PDCAAS Testing Confirms Plaintiff's Allegations.**

Plaintiff alleges that Smucker's front label protein claims are misleading because they fail to account for protein quality. As explained above, failing to account for quality results in an inflated number that misleads consumers into believing that they will receive the nutritional benefit of more protein than the Products actually provide. ECF 1 ¶¶ 27, 36-42. As Smucker is required to do per the FDA regulations discussed below, the back or side label of the Products include a Nutrition Facts Panel ("NFP") with a percent daily value ("DV") for Protein that is calculated using PDCAAS. The DV in the NFP represents what percent of 50 grams of protein the product will provide when accounting for the "corrected amount of protein" as determined by PDCAAS. For example, the NFP of the Peanut Butter & Strawberry Jam Uncrustable Sandwich (ECF 1 ¶ 2) lists the DV for protein as 5%; 5% of 50g is 2.5g. Thus, as Smucker's own calculations confirm, contrary to the "6g PROTEIN" claim on the front label, consumers receive the nutritional benefit of only 2.5 grams of protein. *See id*.

The amino acid analysis referenced in Plaintiff's complaint is an alternative method to the nitrogen method discussed above for measuring protein *quantity*. It breaks down the amino acids in a product and then counts them up to determine total protein. It is more accurate than the nitrogen method, which provides only an estimate of protein quantity based on average conversion factors. Plaintiff's amino acid analysis demonstrates the falsity of Defendant's claims even when considering only quantity. However, the testing is not necessary to prove Plaintiff's misrepresentation claims.

### C.     FDA Regulations Govern Front and Back Labels Differently.

FDA regulations create two different sets of rules: one for front of pack nutrient claims via § 101.13, and one for the NFP via § 101.9. *See Hawkins v. Kroger Co*., 906 F.3d 763, 770 (9th Cir. 2018). This dichotomy results from § 101.13(c) which specifically provides that statements in the NFP are not considered nutrient content claims and are not subject to the requirements of § 101.13, but if that same information is declared "elsewhere on the label or in labeling, it is a nutrient content claim and is subject to the requirements for nutrient content claims." *Id*. § 101.13 (c). As a result, information taken from the NFP is subjected to heightened scrutiny when it is advertised on the front of a package. For example, § 101.13(i)(3) specifically prohibits a manufacturer from stating any "amount or percentage of a nutrient" if that amount is "false or misleading in any respect." *Id*. § 101.13(i)(3) (emphasis added). If a nutrient claim violates any provision of § 101.13, then it "may not be made on the label." *Id*. § 101.13(b).

### III.    ARGUMENT
#### A.     Plaintiff's Claim that Smucker's Front Label Claim Is Misleading Parallels FDA Regulations.

The FDCA does not preempt state law claims if those claims seek to enforce requirements identical to those in the federal regulations. *See Lily v. ConAgra Foods, Inc*., 743 F. 3d 662, 665 (9th Cir. 2014). State and federal law agree that statements about the "amount or percentage of a nutrient" like protein cannot be "false or misleading in any respect" when made on the front of a package. 21 C.F.R. § 101.13(c) & (i)(3); *see also* ECF 1 at ¶¶ 28-39, 64-108.

Here, Plaintiff plausibly alleges that Smucker's standalone, nitrogen-based protein amount on the front of the package is misleading because it fails to account for protein quality. For example,

Smucker's front label says "6g Protein" even though its own testing shows that only 2.5 grams are *actually usable by the human body.* ECF 1 at ¶¶ 2-4, 15. As such, Smucker's label misleads consumers about the amount of protein they will actually receive from consuming the product. Because state and federal law are parallel in this respect, every court to address preemption in the specific context of a claim that a front-of-pack protein amount is misleading has held that the claim is not preempted. *See, e.g., Minor*, No. 20-cv-0290, ECF 35; *Ulrich*, 2017 U.S. Dist. LEXIS 132202, *11-12; *Porter I*, 2016 U.S. Dist. LEXIS 163352 at *17-18; *Gubala*, 2016 U.S. Dist. LEXIS 32759, *40.

*Porter* is instructive. There, defendant claimed "60g Premium Protein" on the front label. *Porter I*, 2016 U.S. Dist. LEXIS 163352 at *4. Although nitrogen testing supported the 60 gram figure, plaintiffs alleged that the protein claim was misleading because the defendant added non-essential amino acids that are high in nitrogen but of little nutritional value. *Id.,* at *5-6. This allowed the defendant to claim a higher protein content than the products actually delivered. *Id.* Defendant argued that the claim was preempted because the "regulations permit manufacturers to calculate the total amount of protein" using the nitrogen method. *Id.,* at *14-15. The court rejected this argument and held that the claim was "not preempted" because plaintiffs plausibly alleged that "***defendants failed to account for the protein quality*** in making the front-label statement, resulting in the type of ***false or misleading statement prohibited by § 101.13(i)(3)***." *Id.*, at *17-18 (emphasis added).[1]

*Ulrich* similarly dealt with a claim in which the defendant added low quality collagen proteins to its products, which "result[ed] in Products that effectively had less protein than they advertise" because "collagen protein is less digestible." *Ulrich*, 2017 U.S. Dist. LEXIS 132202, at *9-11. The court held that the claims were "not preempted." *Id.* at *12. As the court reasoned, "it appears to be a fair inference that [the] use of collagen protein isolate in its blend of proteins must have reduced digestibility of the protein in the Products" and it may "be misleading in a particular

---

[1] The claim's use of the term "premium" in *Porter* does not make a difference. The protein claim was misleading because the product did not provide the amount of protein claimed. *Porter I*, 2016 U.S. Dist. LEXIS 163352 at *4. As the court stated: "If the nitrogen method is exploited to inflate protein content, then *the amount of protein listed on the front label* may be false or misleading." *Porter v. NBTY, Inc. (Porter II)*, 2019 U.S. Dist. LEXIS 190495, at *10 (N.D. Ill. Nov. 4, 2019).

context to use the nitrogen method, and misleading labeling violates the FDCA and accompanying regulations." *Id.* at \*10-11.

Plaintiff's claims here are identical to *Ulrich* and indistinguishable from *Porter* as far as preemption is concerned. Smucker uses low quality protein sources in its products, some of which have PDCAAS scores below 0.5. ECF 1 at ¶ 26. ***Nutritionally speaking, this means Smucker's products provide—in a form humans can use—less than half of the protein claimed on its labels***. ECF 1 at ¶¶ 2-4, 26. By advertising just the quantity figure based on nitrogen testing, Smucker's front label misleads consumers in violation of the FDCA and § 101.13(i)(3). Plaintiff's state claims mirror FDA regulations and, therefore, are not preempted.

Despite the overwhelming weight of the law finding that claims like Plaintiff's are not preempted, Smucker advances three arguments in an attempt to avoid the same result here. First, it argues that its front-label claims are not nutrient content claims and therefore are not subject to § 101.13(i)(3). Second, it contends that Plaintiff's claims impose different requirements from those set by FDA because FDA does not require use of PDCAAS. And, finally, it argues that evidence of 12-step testing is required at the pleading stage. Each of these arguments either misunderstands Plaintiff's claims or rests on an incorrect understanding of the law.

### 1. Smucker's front label claims are nutrient content claims.

Smucker's front of pack protein amounts are indisputably nutrient content claims. The regulations state in clear and plain language, that if information is taken from inside the NFP and declared "elsewhere on the label or in labeling, it ***is a nutrient content claim*** and is subject to the requirements for nutrient content claims." § 101.13 (c) (emphasis added). Smucker has taken the protein quantity figure from the NFP and placed it on the front of its packaging, making it a nutrient content claim under § 101.13(c). Based on this regulation, numerous courts have held that front label quantity statements are nutrient content claims. *See*, *e.g.*, *Hawkins*, 906 F.3d at 770-72 (finding that "0 grams trans fat per serving" was a nutrient content claim); *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1121 (N.D. Cal. 2010) ("[a]n express nutrient content claim is a direct statement about the level or range of a nutrient in a food, like '100 calories'"); *Minor*, ECF 35 at 2-5 (claim of "8 grams protein" is a nutrient content claim); *Ulrich*, 2017 U.S. Dist. LEXIS

132202 at *2, 11-12 (a statement about "the number of grams of protein in each bottle" was a nutrient content claim); *Porter I*, 2016 U.S. Dist. LEXIS 163352 at *17-18 (front label claim of "60g Premium Protein" was a nutrient content claim).

Smucker focuses on the absence of any language characterizing the protein as "high" or "low," but that is immaterial in light of the plain language of § 101.13(c). Moreover, *Hawkins*, *Chacanaca*, *Minor*, *Ulrich* and *Porter I* all involved statements of nutrient quantity without any "characterization" and yet still found the statements to be nutrient content claims. *Id*.

Smucker's reliance on *Vassigh v. Bai Brands LLC*, 2015 U.S. Dist. LEXIS 90675 at *21-23 (N.D. Cal. July 13, 2015) is also misplaced. There, the court determined that statements such as "Antioxidant Infusions" and "Hello Antioxidants!" did not qualify as nutrient content claims because they did not *characterize* the level of the nutrient within the product. *Id*. Here, Smucker's products do more than simply state that they contain protein. Rather, Smucker has taken information from the NFP—e.g., "6g Protein"—and stated it on the front of the package. ECF 1 at ¶ 3. As such, Smucker cannot escape the plain language of Section 101.13(c).

## 2. The FDA does not expressly authorize Smucker's front label claims.

Because Plaintiff's claims parallel the regulations, i.e., § 101.13(i)(3), Smucker can establish preemption only if it can demonstrate that FDA ***expressly authorizes*** front-label protein quantity claims based solely on nitrogen testing. *See Hawkins*, 906 F.3d at 770 ("if FDA regulations ***expressly permit*** the claim '0g Trans Fat per serving' on the face of a product's packaging, any state law claim to the contrary would be preempted.") (emphasis added). Smucker has not done and cannot do this.

### a. Smucker's back panel regulations do not authorize its front label claim.

The critical flaw with Smucker's preemption argument is that it relies on regulations and case law related to information permitted *inside the nutrient facts panel*. Smucker makes two arguments stemming from these regulations: (1), it claims that because FDA regulations permit nitrogen testing to quantify protein inside the NFP, it must be permitted to make that same protein quantity statement elsewhere on the packaging; and (2) it argues that its front label claims cannot be misleading because it provided a percent DV in the NFP. ECF 20 ("Motion") at 20-22.

The Ninth Circuit squarely rejected the first argument in *Reid*, where it held that "a requirement to state certain facts in the nutrition label is not a license to make that statement elsewhere on the product." *Reid*, 780 F.3d at 960. Different rules apply to nutrient content claims—they are subject to section 101.13(i)(3), while claims made inside the NFP are not. *See Hawkins*, 906 F.3d at 770. Thus, the only way a product can make a claim about the *amount* of a nutrient is if it is not "false or misleading in any respect." § 101.13(i)(3). If a statement made in the NFP could never be misleading, then sections 101.13 (c) & (i)(3) would be meaningless since NFP statements are almost exclusively amounts and percentages. *Accord Porter II*, 2019 U.S. Dist. LEXIS 190495, at *9 ("That a protein-content calculation might be misleading when on the front label but permitted in the nutrition panel does not mean plaintiffs' theory fails.")

*Reid* and *Hawkins* addressed the issue within the trans fat context. In *Reid*, the products contained approximately 0.5 grams of trans fat per serving, which NFP regulations permitted to be rounded to "0 grams of trans fat" for the back panel. *Reid*, 780 F.3d at 963. The defendant stated "No Trans Fat" on the front label, which it contended was permissible because it was "synonymous" with what FDA regulations *required* for the NFP. *Id.* The Ninth Circuit agreed the statements were equivalent, but held "it makes no difference here." *Id.* "While a required statement inside a nutrition label escapes regulations reserved for nutrient content claims, ***the identical statement outside of the nutrition label is still considered a nutrient content claim and is therefore subject to section 101.13***," which prohibits amounts and percentages from being misleading in any respect. *Id.* (emphasis added). Since the defendant's products contained up to 0.5 grams of trans fat per serving, "its 'No Trans Fat' claim is misleading in at least one respect." *Id.* Accordingly, the regulations specifying what was permissible within the NFP did not preempt the plaintiff's claims about what was misleading on the front of the package. *Id.* In *Hawkins,* the Ninth Circuit extended this point to the front label statement "0 grams trans fat per serving," which was *identical* to the statement *required* in the NFP. 906 F.3d at 766, 771-72.

*Reid* and *Hawkins* foreclose any argument that Smucker may state nitrogen quantity on the front package simply because the regulations allow it to do so inside the NFP. Just as in *Reid* and *Hawkins*, Smucker's front label statements are misleading in violation of § 101.13(i)(3) and parallel

state laws, so the mere existence of regulations permitting Smucker to make protein quantity claims inside the NFP does not preempt Plaintiff's claims as to the front of the package.

Smucker does not discuss *Reid* or *Hawkins* and, instead, relies on *Dunford*. That case is irrelevant, however, because it involved claims that statements *inside the NFP* were misleading. *See Durnford v. MusclePharm Corp.*, 907 F. 3d 595, 599-601 (9th Cir. 2018) (plaintiff "was misled by the 40-gram figure on the Supplement's nutrition panel"); *accord Porter II*, 2019 U.S. Dist. LEXIS 190495, at *7 (distinguishing *Durnford* on this ground).

Smucker's other argument—i.e., that its front label claims cannot be misleading as a matter of law because it included a DV in the NFP—is similarly unavailing.   ECF 20 at 21. Section 101.9(c)(7)(i) requires that if a product makes a "protein claim" the manufacturer must state a DV inside the NFP based on PDCAAS. The FDA required this to ensure that consumers have information about protein quality "to prevent them from being *misled by information on only the amount of protein present*." 58 Fed. Reg. 2079 at 2101-2 (emphasis added). Indeed, the FDA explicitly acknowledged that "[i]nformation on protein *quantity alone* can be misleading on foods that are of low protein quality." *Id.* (emphasis added). Smucker argues that including a DV on the back gives it a safe harbor from liability for stating a quantitative amount of protein *alone* on the front package—even though FDA has explicitly recognized that this information is misleading when presented alone. That makes no sense for several reasons.

First, nothing in the regulation remotely suggests that it has anything to do with front label quantitative statements, or excuses them from complying with § 101.13(i)(3). Instead, it is clear that this regulation's requirement to place a DV on the back is *in addition* to any of the other requirements of § 101.13 for protein claims, not *instead of* them.

Second, it is clear FDA intended the DV on the back to prevent the required protein quantity *on the back* from being misleading, and that it has nothing to do with a quantitative statement on the front. Smucker ignores that a "protein claim" under § 101.9(c)(7)(i) is broad; it does not have to be a quantitative "amount" in grams that triggers it. A "protein claim" could be, for example, a more subjective claim such as "Good source of Protein" or "Protein-Packed." This regulation envisions a consumer seeing that type of claim and having to flip to the NFP to determine

specifically what it means, where the consumer would then see *both* protein quantity in grams *and* protein quality via the DV *at the same time*. After all, the FDA stated it was quantity "alone" that was misleading. 58 Fed. Reg. 2079 at 2101-2. Moreover, § 101.13(i)(3) is specific to "amount[s] and percentage[s]" that appear on the front label, not the more generic term "protein claim," used in § 101.9(c)(7)(i). When construing these two regulations together, it is clear the FDA intended that protein *quality* statements always accompany *quantities*, i.e., "amounts" because otherwise the quantity, by itself, is misleading. On the back, where protein quantity is mandatory, this is spelled out explicitly in § 101.9(c)(7)(1). On the front, where any such statements are entirely voluntary, the FDA does this implicitly via § 101.13(i)(3). This is particularly true given that a front label protein quantity claim likely causes consumers to bypass looking at the NFP where that information would ordinarily be found.

Third, the Ninth Circuit has rejected the notion that a misleading statement on the front can be remedied by disclosures made elsewhere on the packaging. *See Williams v. Gerber Prods. Co.*, 552 F. 3d 934, 939-40 (9th Cir. 2008). There, the defendant argued that its front label claims could not be misleading because it disclosed an ingredient list on the packaging. *Id*. The Ninth Circuit "disagree[d]" that "consumers should be expected to look beyond the misleading representations on the front of the box to discover the truth of the ingredient list." *Id*. Though the ingredient list complied with FDA regulations, the Ninth Circuit did "not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception." *Id*. That rationale applies here. Smucker's inclusion of a percent of daily value on the back cannot shield it from liability for its misleading statements on the front of its packaging.[2]

### b. Smucker's arguments related to Plaintiff's proposed forms of compliance are wrong and miss the point.

Though state and federal law mandate the exact same requirement that front label protein amounts cannot be "false or misleading in any respect," Smucker attempts to reframe the claims to

---

[2] At minimum, whether the DV on the back cures what is misleading on the front is a fact question not amenable to resolution on the motion to dismiss. In other words, state and federal law agree that protein amounts on the front cannot be misleading so the claim is not preempted. An argument that the claim is not misleading, that goes to the merits, not preemption.

sow confusion. Smucker focuses on Plaintiff's suggested alternative label statements (e.g., stating a PDCAAS figure on its front labels) to argue that because no regulation makes PDCAAS mandatory for the front label, Plaintiff's claims impose a requirement different from that of the FDA. None of this helps Smucker for several reasons, the most important of which is that Plaintiff's claims do not depend on or require *any alternative statement*.

Smucker's attempt to reframe Plaintiff's claims in terms of what Smucker could alternatively say on its front label is wrong. Federal preemption law recognizes a difference between the "requirements" of FDA regulations, and the "remedies" available under state law. *See Bates v. DowAgrosciences LLC*, 544 U.S. 431 (2005). Preemption provisions exempting identical "requirements" do "not preclude States from imposing different or additional *remedies*." *Id.* at 448. Here, Plaintiff's claim is not that Smucker *must* state anything at all about protein on the front label, only that whatever it says cannot be misleading. The "requirement" to avoid stating a protein amount that is misleading in any respect is identical between federal and state law, thus the claim is not preempted. Whatever Smucker could say alternatively on the front to avoid being misleading is a question about the *remedies* available in this case, in particular the scope of injunctive relief, not *liability*. At a minimum, state and federal law agree that Smucker cannot make the current form of its statement.

This interpretation aligns with the framework of the regulations. The Court in *Porter II* explained that suggested alternative protein claims "represent[] [some] of many advertising solutions, not new or different requirements concerning the composition or labeling of food." *Porter II*, 2019 U.S. Dist. LEXIS 190495, at *9-10. FDA and its regulations "do not specify every way protein content or source can be calculated or advertised outside the nutrition panel." *Id.* "Instead, there is a uniform federal requirement prohibiting false or misleading food labels". *Id.* While the regulatory regime leaves open how to avoid being misleading, there is no question that misleading labels are always prohibited due to sections 101.13(i)(3) and 101.13(b). If Smucker's front label protein quantity claims are misleading, then, at a minimum, Smucker *must* remove the claim as it exists now. After all, "the general rule is that 'nutrient content claims' are ***not permitted on food labels***." *Reid*, 780 F.3d at 959 (emphasis added).

Even accepting the concept that applying PDCAAS to the front label imposes a "requirement," Smucker's argument fails because: (1) Plaintiff's claims do not depend on Smucker having to make such a statement, but (2) doing so would still be entirely consistent with FDA regulations. Both *Porter I* and *Ulrich* held that "it would not violate federal regulations" to use PDCAAS for the front label even though it is permissible to use nitrogen testing for the NFP. *Porter I*, 2016 U.S. Dist. LEXIS 163352 at. *16; see also Ulrich*, 2017 U.S. Dist. LEXIS 132202, at *11-12 ("[T]o the extent that plaintiff claims that Probalance violates state law…because they do not calculate the protein content according to the PDCAAS-adjusted method, plaintiff is not asserting that Probalance violated any state-law requirements different from or additional to the requirements of the FDCA and its implementing regulations.") Any inconsistency is irrelevant because, as *Porter II* explained, "[t]he regulations already allow for certain inconsistencies in statements of protein content" and using PDCAAS is an option for compliance with § 101.13(i)(3). *Porter II*, 2019 U.S. Dist. LEXIS 190495, at *9-10.[3]

### 3.  12-sample testing is unnecessary at the pleading stage.

Smucker contends that preemption is warranted because the Complaint does not allege that a Plaintiff used a 12-sample method to test the product. Stated differently, Smucker's position is that Plaintiff must support her allegations with definitive proof *at the pleading stage*. The Ninth Circuit rejected this argument in *Durnford* where the defendant argued that the plaintiff was required to comply with FDA's 12-sample testing protocol. *See Durnford*, 907 F.3d at 603-4. The Court declined to mandate that requirement finding that "***plaintiffs are generally not expected to provide evidence in support of their claims at the pleading stage***…***nor are they required to plead the 'probability' of their entitlement to relief***." *Id.* at 603, n.8 (emphasis added). Given that there

---

[3] Stating on the corrected amount of protein per serving as determined by PDCAAS on the front label is just one potential cure to the misleading standalone quantitative claim. There could be other alternatives, such as removing the nutrient content claim from the front label, stating "6g total protein, 2.5g digestible protein," or even replicating on the front what the FDA requires on the back, e.g., "6g Protein, 5% DV." But regardless of the ultimate remedy, the underlying liability results from the identical federal and state requirement prohibiting a misleading protein amount on the front of the package.

1  is no need to produce evidence of testing at the pleading stage, Smucker's argument that "12-

2  sample" testing is necessary to Plaintiff's claims fails.[4]

3          Smucker relies on one case – *Salazar v. Honest Tea, Inc.*, 74 F. Supp. 3d 1304 (E.D. Cal.

4  2014). But, that decision pre-dates *Durnford*, which confirmed that *Salazar* misapplied the proper

5  pleading standard. *See Durnford*, 907 F.3d at 603 n.8; *see also Gubala*, 2016 U.S. Dist. LEXIS

6  32759, at *25 (discussing *Salazar*). Rule 12(b)(6) requires *only* a plausible claim for relief and all

7  facts and inferences must be made in the plaintiff's favor; it does not require definitive *proof* at the

8  pleading stage. *See, e.g.*, *Smith v. Allmax Nutrition, Inc.*, 2015 U.S. Dist. LEXIS 171897, *22 (E.D.

9  Cal. Dec. 23, 2015) ("While the Court agrees with Defendant that this is the standard that the FDA

10  holds Defendant to, the Court finds that Plaintiff's allegations sufficient at this point in the

11  proceedings"); *Clay v. Cytosport, Inc.*, 2015 U.S. Dist. LEXIS 110447, at *8 (S.D. Cal. Aug. 19,

12  2015) (same).

13          **B.      Plaintiff May Plead Both Legal and Equitable Claims at This Stage.**

14          Smucker's argument that "equitable relief is not available under the CLRA, FAL, or UCL"

15  is wrong on the facts and the law. Regarding the facts, Smucker argues that Plaintiff "fails to allege

16  any facts showing that she has no adequate remedy at law." ECF 20 at 5. However, Plaintiff is

17  entitled to plead remedies in the alternative and does in fact allege that she has no adequate remedy

18  at law. *See* ECF 1 ¶¶ 69, 80, 82, 101, 103, 107. Smucker similarly misstates the law when it argues

19  that "equitable relief is not available under the CLRA." ECF 20 at 4.[5] As this Court recognized,

20  "the CLRA and UCL's remedies are not exclusive, but are in addition to any other procedures or

21  remedies for any violation or conduct provided for in any other law." *Madani v. Volkswagen Grp.*

22  *of Am., Inc.*, No. 17-cv-07287-HSG, 2019 U.S. Dist. LEXIS 133926, at *26 (N.D. Cal. Aug. 8,

23  2019) (citation omitted). "[A]t the pleading stage, theories of equitable remedies are not barred by

24  a plaintiff adequately pleading theories supporting monetary relief." *Id.* at *27.

25  ─────────────────

26  [4] Moreover, Plaintiff's allegations rely on Smucker's own PDCAAS testing as stated on the NFP. *See supra* § II.B.

27  [5] Smucker's conclusion that punitive damages are unavailable under the CLRA is also incorrect. ECF 20 at 7. *See* Cal. Civ. Code §§ 1780(a)(4); 3294(a). Moreover, a complaint is not subject to a motion to dismiss for failure to state a claim under Rule 12(b)(6) because the prayer seeks relief

28  that is not recoverable as a matter of law. *See Rice-Sherman v. Big Heart Pet Brands, Inc.*, No. 19-cv-03613-WHO, 2020 U.S. Dist. LEXIS 46197, at *41-42 (N.D. Cal. Mar. 16, 2020).

Smucker's reliance on *Sonner v. Premier Nutrition Corp*., 971 F.3d 834 (9th Cir. 2020), is inapposite. In that case, after four years of litigation and on the eve of trial, the plaintiffs voluntarily dismissed their only legal claim (for deception under the CLRA) in an attempt to secure a bench trial, rather than a jury trial, on their fraudulent-prong-UCL claim, which the court held Plaintiffs could not do. *Id.* at 837-38. The CLRA claim had already survived a motion for summary judgment, (*id.*) and the plaintiffs had never alleged that they lacked an adequate legal remedy in their complaint. *Id.* at 844. The Court held that federal law governed the question of whether Plaintiff must lack an adequate remedy at law before a court may issue injunctive relief, and that Plaintiff had failed to do so. *Id.*[6]

Critically, "*Sonner* does not hold that plaintiffs may not seek alternative remedies at the pleading stage." *Sagastume v. Psychemedics Corp.*, No. CV 20-6624, 2020 U.S. Dist. LEXIS 247754, at *21 (C.D. Cal. Nov. 30, 2020); *see also Shay v. Apple Inc*., No. 20cv1629, 2021 U.S. Dist. LEXIS 4033, at *23 (S.D. Cal. Jan. 8, 2021) ("*Sonner* holds that a complaint must allege that she lacks an adequate legal remedy. . . . Plaintiff may plead in the alternative but she must also allege she lacks an adequate legal remedy."); *In re Juul Labs, Inc.,* No. 19-md-02913-WHO, 2020 U.S. Dist. LEXIS 197766, at *225-226 n.67 (N.D. Cal. Oct. 23, 2020) (granting plaintiffs "leave to amend to expressly allege that their remedies at law are inadequate and to support their claim to equitable restitution under the UCL and FAL"). Plaintiff remains entitled to plead remedies in the alternative and has done so here.

This case is also in a much different posture than *Sonner*, where the plaintiff's legal claim had already survived summary judgment and the plaintiff simply chose to dismiss it to secure a perceived advantage. It is currently unknowable whether any of Plaintiff's legal claims will survive summary judgment or provide any remedy at all. *See In re JUUL*, 2020 U.S. Dist. LEXIS 197766, at *225-27 ("The facts of *Sonner* —where the plaintiff on the eve of trial sought to secure a bench trial under the UCL by foregoing CLRA damages claims that had to be tried to a jury—are

---

[6] Plaintiffs preserve for appeal that *Sonner* wrongly applied federal law in a diversity case. Since California state law holds that an inadequate legal remedy is not required to issue equitable relief, that holding is outcome determinative as to all equitable claims under state law, and therefore should govern under *Erie. See Hanna v. Plumer*, 380 U.S. 460, 467-69 (1965).

inapposite considering the allegations and the posture of the CAC.").[7] It would be bitterly ironic if the *possible* availability of a common law fraud claim automatically precluded UCL and FAL claims from the outset of a lawsuit because "[t]he UCL and the FAL were enacted for the specific purpose of creating new rights and remedies that were not available at common law." *See Nationwide Biweekly Admin., Inc. v. Superior Court*, 462 P.3d 461, 485-87 (Cal. 2020) (statutes broaden the types of practices that can be found unfair and that they eliminate a number of elements required in common law actions for fraud); *see also Summit Estate, Inc. v. United Healthcare Ins. Co.*, No. 4:19-cv-06724 YGR, 2020 U.S. Dist. LEXIS 166721, at *25 (N.D. Cal. Sep. 10, 2020) (allowing an equitable claim under the UCL in the alternative to claims for legal remedies "is consistent with the broad remedial purpose of the UCL" and with § 17205 of the UCL, which provides that UCL remedies are "cumulative" to other available remedies).

Further, damages under the fraud claim would not provide an adequate remedy for Smucker's continued misconduct in the future. ECF 1 ¶ 54, 82, 103; *see also Deras v. Volkswagen Grp. of Am., Inc.*, No. 17-cv-05452-JST, 2018 U.S. Dist. LEXIS 83553, at *19 (N.D. Cal. May 17, 2018) (allegations of a risk of future harm supported plaintiff's request for equitable injunctive relief); *Gross v. Vilore Foods Co.*, No. 20cv0894 DMS (JLB), 2020 U.S. Dist. LEXIS 200913, at *9-10 (S.D. Cal. Oct. 28, 2020) (rejecting an argument that plaintiffs had an adequate remedy at law and concluding they could maintain UCL and FAL claims for injunctive relief); *LSH Co. v. Transamerica Life Ins. Co.*, 2019 U.S. Dist. LEXIS 151847, at *38-39 (C.D. Cal. Mar. 20, 2019) (plaintiffs did not have an adequate remedy at law where damages would not prevent continued wrongful conduct by the insurer).

**C.     The Economic Loss Doctrine Does Not Bar Fraud and Misrepresentation Claims.**

---

[7] There are significant differences between Plaintiff's equitable and legal claims. "A claim under the fraudulent prong of the UCL does not require a showing that the statement was false, that the party who made it knew that it was false or that the plaintiff reasonably relied on the statement." *Naeyaert v. Kimberly-Clark Corp.*, No. ED CV17-00950, 2018 U.S. Dist. LEXIS 227121, at *16 (C.D. Cal. Sep. 28, 2018). Given these differences, a common law claim for fraud is significantly less certain to provide a remedy than a UCL claim. *See Am. Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937) ("A remedy at law does not exclude one in equity unless it is equally prompt and certain and in other ways efficient.").

Smucker argues that Plaintiff's common law fraud, deceit, and misrepresentation claim (Count 3) fails because "the economic loss doctrine bars purely economic harm." ECF 20 5. However, courts in this Circuit routinely hold that the economic loss doctrine does not apply to claims of negligent misrepresentation that are grounded in fraud. *See Anderson v. Apple Inc*., 500 F. Supp. 3d 993, 1021 (N.D. Cal. 2020) (analyzing cases and concluding plaintiffs fraud claim was not foreclosed by the economic loss rule); *Young v. Neurobrands*, LLC, No. C 18-05907 JSW, 2019 U.S. Dist. LEXIS 67905, at *16 (N.D. Cal. Feb. 19, 2019) ("Because Plaintiffs allege that they were fraudulently induced to purchase the Products, they have stated a claim under tort principles, which would not be precluded by the economic loss doctrine."); *see also Kalitta Air, L.L.C. v. Central Texas Airborne Sys., Inc.*, 315 Fed.Appx. 603, 607 (9th Cir. 2008) (holding negligent misrepresentation is a "species of fraud" under California law, for which "economic loss is recoverable"); *see also Bret Harte Union High Sch. Dist. v. Fieldturf, USA, Inc.,* No. 1:16-cv-00371-DAD-SMS, 2016 U.S. Dist. LEXIS 83295, at *16 (E.D. Cal. June 27, 2016) (denying motion to dismiss negligent misrepresentation claim when plaintiff's "claim sounds more in deceit/fraud than it does in negligence."); *Zakaria v. Gerber Prods. Co.,* No. LA CV15-00200 JAK (Ex), 2015 U.S. Dist. LEXIS 80428, at *31 (C.D. Cal. June 18, 2015) (same).[8]

### D.      Plaintiff States a Claim for Unjust Enrichment.

Plaintiff alleges that Smucker has been unjustly enriched by labeling its products with false and misleading protein claims, and that Plaintiff paid a price premium as a result. ECF 1 ¶¶ 5, 15, 44, 106. Consistent with every other argument from Defendant, it cherry picks a quote from the complaint out of context to argue that the "[c]omplaint expressly frames [the unjust enrichment claim] as an equitable claim." ECF 20 at 6, citing ECF 1 ¶106. The very next paragraph of the complaint states: "**Defendant must pay restitution** to Plaintiff and the Class members for its unjust enrichment, as ordered by the Court." *Id*. at ¶ 107 (emphasis added). Contrary to Smucker's argument, Plaintiff has not pled her unjust enrichment claim as an equitable claim.

---

[8] Contrary to Smucker's assertion, the economic loss doctrine does not preclude recovery of punitive damages for a fraud claim, and therefore cannot serve as a basis for dismissal of Plaintiff's punitive damages claims. ECF 20 at 8; Cal. Civ. Code § 3294(a).

As this Court has recognized in denying a motion to dismiss an unjust enrichment claim, a plaintiff is "permitted to plead an unjust enrichment claim in the alternative." *Loop AI Labs, Inc. v. Gatti*, No. 15-cv-00798-HSG, 2015 U.S. Dist. LEXIS 117268, at *23 (N.D. Cal. Sep. 2, 2015); *see also In re S.C. Johnson & Son, Inc.*, No. 20-cv-03184-HSG, 2021 U.S. Dist. LEXIS 141101, at *26-27 (N.D. Cal. July 28, 2021) ("Therefore, at this stage, the Court will construe the cause of action as a quasi-contract claim seeking restitution, as it has done in prior cases"). And the Ninth Circuit has clearly held that a district court errs when it dismisses an "unjust enrichment" claim as "duplicative of or superfluous of" other claims. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762-63 (9th Cir. 2015). Therefore, Plaintiff is permitted to state a separate claim for unjust enrichment, and has pled allegations sufficient to state such a claim. And, for the reasons stated herein, Plaintiff has stated a claim for violations of the UCL, CLRA, and FAL and therefore dismissal as a "derivative" claim is unwarranted. *See* ECF 20 at 6-7.

**E.    Plaintiff's CLRA Letter Provided Sufficient Notice.**

Under the CLRA, a plaintiff must give an alleged violator notice of any alleged wrongdoing 30 days before filing a suit for damages and "[d]emand that the person correct, repair, replace, or otherwise rectify the goods or services alleged to be in violation." Cal. Civ. Code § 1782(a). On May 24, 2021, Defendant received Plaintiff's letter outlining her claims pursuant to the CLRA, UCL, FAL "in connection with [Defendant's] marketing, advertisement and sale of food products that make protein claims on the front of product packages (the 'Products')." ECF 20-3 ("RJN"), Ex. A (the "Letter"). Plaintiff attached a "non-exhaustive list" of Products at issue. *Id*. The Letter states: "Defendant's use of the nitrogen method for making front label protein claims is unlawful under Food & Drug Administration ("FDA") regulations and is false and misleading under federal and state law." On August 20, 2021, Plaintiff filed her complaint after Defendant did not remedy the violations identified in the Letter. ECF 1.

Smucker does not dispute that it received the letter more than 30 days prior to the litigation. Instead, it argues that because Plaintiff's complaint included amino acid content testing that further revealed the overstatement of Defendant's protein claims in her complaint, but did not reference that testing in the Letter, her CLRA claim should be dismissed. *Id*. Smucker demands more than is

required by the statute, and unlike the cases on which it relies, Plaintiff does not put more misleading statements at issue than were described in the Letter. *Cf. Ruszecki v. Nelson Bach USA LTD.*, 2015 U.S. Dist. LEXIS 151946, at *16 (S.D. Cal. June 25, 2015) (finding CLRA letter deficient because it omitted certain misleading statements that plaintiff put at issue in the complaint).[9] Instead, the Letter describes the misleading protein statements on the front label and those are the exact statements at issue in the complaint. *Compare* CLRA Letter (describing "front label protein claims") *with* ECF 1 ¶¶ 2, 13, 33, Ex. A (describing "protein claims" on the "front label"). Plaintiff's amino acid content testing is simply another method of demonstrating that the claims are false.

Next, Defendant argues that the Letter omitted certain products listed in the Complaint, and that the claims relating to those Products must therefore "be dismissed with prejudice." ECF 20 at 13. However, Defendant ignores the definition of "Products" that Plaintiff included in the Letter. Plaintiff put Defendant on notice that all of its "food products that make protein claims on the front of product packages (the 'Products')" were subject to claims. RJN, Ex. A. Plaintiff included a "non-exhaustive list" of Products as examples of those that overstate the protein on the front label. *Id.* Similarly, Plaintiff included a "non-exhaustive list" of Products with her Complaint (*see* ECF 1 ¶ 13, Ex. B), and defined the Products at issue to be "any . . . product that claims a specific amount of protein on the front of its label." ECF 1 ¶ 13. Simply put, "[t]he [Letter] describes the problem (the allegedly unauthorized nutrient content claims . . .) and demands that [Defendant] remedy the violations. No more is required." *Vassigh*, 2015 U.S. Dist. LEXIS 90675, at *27; *see also Snarr v. Cento Fine Foods Inc*., No. 19-cv-02627-HSG, 2019 U.S. Dist. LEXIS 220063, at *15-16 (N.D. Cal. Dec. 23, 2019) (finding sufficient notice where letter defined products to be same products in complaint).

Even if this Court finds the notice deficient as to the Products at issue, the appropriate remedy is to provide leave to amend to correct any errors in presuit notice. *See Corbett v. Pharmacare U.S., Inc.,* No. 21cv137-GPC, 2021 U.S. Dist. LEXIS 201256, at *53-54 (S.D. Cal.

---

[9] *See also Durnford*, 907 F.3d at 604, n.8 ("We need not address whether plaintiffs are ever required to allege, at the pleading state, that there are tests contradicting the nutrition panel that comply with FDA's testing protocols. We note, however, that ***plaintiffs are generally not expected to provide evidence*** in support of their claims at the pleading stage.") (emphasis added).

1   Oct. 19, 2021) (granting leave to amend to correct errors in CLRA notice); *Frenzel v. Aliphcom*, 76

2   F. Supp. 3d 999, 1016-17 (N.D. Cal. 2014) (same); *Ang v. Bimbo Bakeries USA, Inc.*, No. 13-cv-

3   01196-WHO, 2013 U.S. Dist. LEXIS 138897, at *39-41 (N.D. Cal. Sep. 25, 2013) (same).

4       **F.    Plaintiff Has Standing Under Rule 12(b)(1).**

5           **1.    The Products at issue are substantially similar.**

6           Smucker argues that Plaintiff lacks standing to bring claims relating to Products the Plaintiff

7   did not purchase because the Products are not substantially similar to those she did purchase.  ECF

8   20 at 14-15. Preliminarily, there is "no controlling authority" in this Circuit on how to analyze

9   claims at the motion to dismiss stage relating to products the plaintiff did not purchase. *Victor v.*

10  *R.C. Bigelow, Inc.*, No. 13-cv-02976-WHO, 2014 U.S. Dist. LEXIS 34550, at *24 (N.D. Cal. Mar.

11  14, 2014); *Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. C-11-2910-EMC, 2012 U.S. Dist.

12  LEXIS 101371, at *35-38 (N.D. Cal. July 20, 2012). Some courts do so as an issue of standing;

13  others have concluded that it is "more appropriately deferred until the class certification stage" and

14  analyzed through the rubric of typicality. *Victor*, 2014 U.S. Dist. LEXIS 34550, at *24-25 (citation

15  omitted). Plaintiff contends that class certification is the appropriate time to consider "substantial

16  similarity" so that the question can be answered based on evidence developed during discovery,

17  rather than allegations.

18         Courts that have considered the question as one of standing have held that a plaintiff "may

19  assert claims for unnamed class members based on products he or she did not purchase so long as

20  the products and alleged misrepresentations are substantially similar." *Miller v. Ghirardelli*

21  *Chocolate Co*., 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012). Courts have found substantial similarity

22  for purposes of standing where (1) the products are physically similar; (2) the differences between

23  the products are immaterial because the legal claim and injury to the customer are the same; and

24  (3) both the products and the legal claims and injury are similar. *See Yamasaki v. Zicam LLC*, No.

25  21-cv-02596-HSG, 2021 U.S. Dist. LEXIS 205494, at *6 (N.D. Cal. Oct. 25, 2021) (citing *Ang*,

26  2014 U.S. Dist. LEXIS 34443). As this Court has recognized, "the best approach is one which

27  focuses on whether the type of claim and consumer injury is substantially similar as between the

28  purchased and unpurchased products. That determination necessarily focuses on whether the

resolution of the asserted claims will be identical between the purchased and unpurchased products." *Id.*

Plaintiff easily satisfies the substantial similarity test for purposes of a motion to dismiss. She alleges the same legal claims with respect to all products—i.e., that Smucker deceptively claims more protein than the Products actually provide—and she alleges that the Products are substantially similar in all important respects to this claim—i.e. that they all contain less protein than advertised, as revealed by Smucker's own PDCAAS testing and admissions. ECF 1 ¶¶ 13-15. Resolving "the asserted claims will be identical between the purchased and unpurchased products." *Ang*, 2014 U.S. Dist. LEXIS 34443, at *28. Smucker argues the snack mix products and uncrustables are "entirely different" and points to its meat-based and plant-based products as having ingredients that "fail the substantially similar test." ECF 20 at 15. But whether the products have different ingredients is not dispositive. *Astiana*, 2012 U.S. Dist. LEXIS 101371, at *37 ("That the different ice creams may ultimately have different ingredients is not dispositive as Plaintiffs are challenging the same basic mislabeling practice across different product flavors."). And regardless of the ingredients, Plaintiff alleges that all Products relied on nitrogen testing for the front label protein claims and therefore all protein claims are overstated. *See, e.g.*, ECF 1 ¶ 34. Thus, "the differences between the products are immaterial because the legal claim and injury to the customer are the same." *Yamasaki*, 2021 U.S. Dist. LEXIS 205494, at *6.[10]

### 2. Plaintiff alleges she paid a price premium and therefore suffered a particularized injury.

"Under California law, the economic injury of paying a premium for a falsely advertised product is sufficient harm to maintain a cause of action." *Davidson*, 889 F.3d at 965; *Ivie v. Kraft Foods Glob., Inc.*, No. C-12-02554-RMW, 2013 U.S. Dist. LEXIS 25615, at *10-11 (N.D. Cal. Feb. 25, 2013) (economic injury sufficient for Article III standing under UCL and FAL). To plead an economic injury, "a consumer must allege that she was exposed to false information about the

---

[10] Smucker cites *Padilla v. Whitewave Foods*, wherein the Central District court found that the allegations that "on information and belief all [Products] contain substantially similar fill levels and thus, substantially similar non-functional slack fill . . ." complaint failed to establish the Products were substantially similar. *Padilla v. Whitewave Foods Co.*, No. LA CV18-09327 JAK (JCx), 2019 U.S. Dist. LEXIS 167126, at *25 (C.D. Cal. July 26, 2019). However, unlike *Padilla*, Plaintiff has alleged sufficient facts based on more than "information and belief" to establish the Products are substantially similar, should this Court apply that test.

product purchased, which caused the product to be sold at a higher price." *Davidson*, 889 F.3d at 96; *see also Chacanaca*, 752 F. Supp. 2d at 1125. Plaintiff has done just that; she alleges that she "paid more money for the Products than she would have paid for other or a similar product that was not mislabeled regarding the number of grams of protein it contained." ECF 1 ¶ 52. Plaintiff has therefore alleged an economic injury in the form of a price premium paid. *See also* ECF 1 ¶¶ 53, 55, 44. And to the extent Smucker is trying to argue that the complaint does not provide sufficient detail to determine the specific amount of the premium, Plaintiff is not required to provide any such detail. *See Gregorio v. Clorox Co*., No. 17-cv-03824-PJH, 2018 U.S. Dist. LEXIS 19542, at *17 (N.D. Cal. Feb. 6, 2018) ("Courts routinely deny motions to dismiss similar actions in which the complaint alleges that a price premium was paid but fails to allege the specific amount paid for each product.").[11]

Plaintiff alleges that Smucker's Products contain misleading protein claims, that she relied on those claims, and that she would not have purchased the Products or otherwise paid a price premium. ECF 1 ¶¶ 50-53. Nothing more is required for a particularized injury. *See In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1088 (C.D. Cal. 2015) ("To have UCL and CLRA standing, [the plaintiff] must have purchased a product he would not otherwise have purchased, or paid a price premium for the product, in reliance on [the defendant's] misrepresentations."); *see also Manchouck v. Mondelez Int'l Inc*., 2013 U.S. Dist. LEXIS 138877 (N.D. Cal. Sept. 26, 2013) (same). Smucker twists the standard to argue that the amino-content testing referenced in the Complaint cannot be used to state that Plaintiff suffered a particularized injury. ECF 20 at 16. However, the injury is not the protein that Plaintiff did not receive, but rather the amount she overpaid for the Products. ECF 1 ¶¶ 53, 55; *Chacanaca*, 752 F. Supp. 2d at 1125-26 (Plaintiff's injury is economic, not health impact of foods purchased).

### G.    Plaintiff Has Standing to Seek an Injunction.

Plaintiff alleges that she continues to desire to purchase Defendant's products, would likely purchase the products again if the products were reformulated to contain the amount of protein

---

[11] Defendant's reliance on an unpublished Ninth Circuit case discussing the adequacy of price premium allegations to state an injury under a New York statutory claim is not instructive. ECF 20 at 18 (citing *Naimi v. Starbucks Corp*., 798 F. App'x 67, 70 (9th Cir. 2019)).

represented on the label, that she regularly visits stores where Defendant's products are sold and she "will be unable to rely on Defendant's labels when shopping for protein products." ECF 1 at ¶ 54. These allegations are sufficient to confer standing to Plaintiff, as confirmed by the Ninth Circuit in *Davidson v. Kimberly-Clark Corp*., 889 F.3d 956, 966-72 (9th Cir. 2018) (plaintiff properly alleged a "threat of imminent or actual harm by not being able to rely on [the] labels in the future" that is "sufficient to confer standing to seek injunctive relief.") Smucker argues that "there is no likelihood of future harm because Plaintiff is now aware of the alleged 'true' protein content of the Products and therefore cannot be misled by the packaging in the future."  ECF 20 at 19. *Davidson* also forecloses this argument. In reaching the conclusion that a "previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false," the Ninth Circuit cited to *Ries v. Arizona Iced Tea. See Davidson*, 889 F.3d at 969. The *Ries* plaintiffs were allowed to seek an injunction against the "All Natural" representations even though high fructose corn syrup and citric acid, the ingredients that rendered the "all natural" claim false and misleading, were listed on the products' ingredient list. *Ries v. Ariz. Bevs. USA LLC*, 287 F.R.D. 523, 533 (N.D. Cal. 2012) ("Should plaintiffs encounter the denomination 'All Natural' on an AriZona beverage at the grocery store today, they could not rely on that representation with any confidence. This is the harm California's consumer protection statutes are designed to redress."); *see also Milan v. Clif Bar & Co*., 489 F. Supp. 3d 1004, 1007 (N.D. Cal. 2020) (holding that plaintiff's ability to check the amount of added sugar on the NFP did not preclude the possibility that the plaintiff could be misled by statements on the front label). Put differently, courts have held that the ability to fact-check a front label claim by looking at the back does not change the cognizable informational reliance injury a plaintiff plausibly suffers when confronting front label claims while shopping.

Smucker's reliance on the unpublished *Coca-Cola* case is unavailing.  ECF 20 at 20. Preliminarily, contrary to Smucker's unsupported conclusion that *Coca-Cola* is binding over *Davidson* (Motion, n. 13), *Davidson* is published Ninth Circuit precedent and therefore controls. *Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001) ("Once a panel resolves an issue in a precedential opinion, the matter is deemed resolved, unless overruled by the court itself sitting en

1   banc, or by the Supreme Court."). Moreover, in *Coca-Cola*, the court held that where the plaintiffs

2   did not allege a present intent to purchase the product at issue or similar products or any likelihood

3   of continuing to be misled by the label about the actual contents of the product, but merely alleged

4   that [if the product] were properly labeled, they would consider purchasing it." *In re Coca-Cola

5   Prods. Mktg. & Sales Practices Litig. (No. II)*, No. 20-15742, 2021 U.S. App. LEXIS 26239, at *4

6   (9th Cir. Aug. 31, 2021) (emphasis added). Unlike the *Coca-Cola* plaintiffs, Plaintiff here has

7   alleged sufficient facts to confer standing. *See* ECF 1 ¶ 53.

8       **H.      Plaintiff's Complaint Satisfies Rule 9(b).**

9       Plaintiff has adequately pleaded "the who, what, when, where, and how of the misconduct

10  charged," which is all Rule 9(b) requires. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th

11  Cir. 2003) (internal quotation marks omitted). The "who" is Defendant Smucker; the "what" are

12  misrepresentations of the amount of protein that the products provide (ECF 1 ¶ 34); the "when" is

13  the class period, defined as August 20, 2017 to present (ECF 1 ¶ 56); the "where" is on the products'

14  front labels (ECF 1 ¶ 34); and the "how" is by using the misrepresentations and omissions to sell

15  products at a higher price at the expense of Plaintiff and other similarly situated individuals (ECF

16  1 ¶¶ 50-55). Numerous courts have found similar allegations sufficiently detailed. *See, e.g., In re

17  ConAgra Foods, Inc.*, 908 F.Supp.2d 1090, 1099 (C.D. Cal. 2012) ("[A] plaintiff complies with

18  Rule 9(b) if he or she asserts that allegedly misleading statements appeared on the label or packing

19  of a consumer product."); *Bruton v. Gerber Products Co.*, No. 12-cv-02412-LHK, 2014 U.S. Dist.

20  LEXIS 5493, at *47 (N.D. Cal. Jan. 15, 2014) (same); *Astiana v. Ben & Jerry's Homemade, Inc.*,

21  No. C 10-4387 PJH, 2011 WL 2111796, at *6 (N.D. Cal. May 26, 2011) (describing allegations in

22  similar terms); *Ham*, 70 F. Supp. 3d at 1192 (same); *see also Davidson*, 889 F.3d at 964-65 (holding

23  the plaintiff satisfied Rule 9(b) by adequately explaining her theory as to why the term "flushable"

24  was false).

25      **I.      Plaintiff Alleges a Reasonable Consumer Would Be Misled.**

26      To state a claim under the UCL, FAL, and CLRA, a plaintiff needs to plead only that the

27  defendant's statements were likely to deceive a reasonable consumer. *See Williams*, 552 F.3d at

28  938; *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 679 (2006). "This standard

also applies to common law fraud and negligent misrepresentation claims." *Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1193 (N.D. Cal. 2014) (citation omitted). "[W]hether a reasonable consumer would be deceived by a product label is generally a question of fact not amenable to determination on a motion to dismiss," although "in rare situations a court may determine, as a matter of law, that the alleged violations of the UCL, FAL, and CLRA are simply not plausible." *Id.* This is not one of those "rare situations."

Here, Plaintiff plausibly alleges that when consumers see "6g Protein" they reasonably expect to receive "6g Protein" nutritionally when they eat the product, rather than only 2.5 grams of protein, which is what the products actually provide due to their poor protein quality. Receiving 3.5 grams less than what consumers expect based on the claim renders the claim misleading. Smucker ignores this reality and argues that its front label protein claims "do not say or suggest anything about 'providing' a certain amount of high quality 'bio-usable' protein," and therefore it is "implausible" that a "reasonable consumer" would interpret the statements as such. ECF 20 at 22. In other words, Smucker argues that the "reasonable consumer" here is so well informed about nutrition and protein science to know that "6g Protein" actually means only "2.5g Protein." Not only is this directly contrary to the allegations in the complaint (ECF 1 ¶¶ 2, 15, 39), which this Court must accept as true, but the argument itself is implausible and absurd. Regardless, Smucker's rank speculation that consumers know 6 grams actually means 2.5 grams cannot overcome Plaintiff's plausible allegations regarding what reasonable consumers expect. And, taking those allegations as true, Plaintiff plausibly pled that Defendants' front label protein claims mislead consumers. *See, e.g.*, *Williams*, 552 F.3d at 939 ("The product is called 'fruit juice snacks' and the packaging pictures a number of different fruits, potentially suggesting (falsely) that those fruits or their juices are contained in the product."); *Ham*, 70 F. Supp. 3d at 1194 ("Ham's argument is simple: a reasonable consumer would not expect to find SAPP in the 'All Natural' Waffles because SAPP is not a natural ingredient. This argument is plausible."); *Mohamed v. Kellogg Co.*, No. 14-CV-2449 L (MDD), 2015 U.S. Dist. LEXIS 181088, at *5 (S.D. Cal. Aug. 19, 2015) (finding reasonable consumer could interpret "made with natural ingredients" claim to mean all ingredients

1  in the product were natural).[12]

2  **J.    Plaintiff Has Alleged a Claim Under the UCL.**

3  Smucker's entire argument regarding the sufficiency of Plaintiff's UCL claims under the

4  unlawful and fraudulent prongs rests on its other arguments regarding the sufficiency of her

5  allegations that the Products violate state and federal laws and that a reasonable consumer is likely

6  to be misled.  ECF 20 at 24-25. For the reasons discussed herein, Plaintiff has sufficiently alleged

7  facts to support those claims, thus she has also alleged claims under the unlawful and fraudulent

8  prongs of the UCL. *See supra* § III.A (discussing violations of state and federal labeling laws), §

9  III.I (discussing allegations regarding Defendants labels misleading reasonable consumers).

10  **IV.    PLAINTIFF REQUESTS LEAVE TO AMEND IF NECESSARY**

11  If a complaint is dismissed for failure to state a claim, "leave to amend should be granted

12  unless the Court determines that the allegation of other facts consistent with the challenged pleading

13  could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806

14  F.2d 1393, 1401 (9th Cir. 1986). Indeed, leave to amend is only really properly denied "where the

15  amendment would be futile." *DeSoto v. Yellow Freight Sys.*, 957 F.2d 655, 658 (9th Cir. 1992).

16  Should this Court find the Complaint insufficient, Plaintiff requests leave to amend.

17  **V.    CONCLUSION**

18  For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant's

19  Motion to Dismiss or, in the alternative, grant Plaintiffs leave to amend the Complaint.

20  //

21  //

22  [Signature on next page]

23  //

24  //

25

26  [12] Even if the Court were to determine as a matter of law on the pleadings that Defendant's representations were true—which it should not do—that would still be insufficient to dismiss the complaint. "California courts have stressed that, while a statement 'may be accurate on some level,'
27  it may 'nonetheless tend to mislead or deceive.'" *Mullins v. Premier Nutrition Corp.*, 178 F. Supp. 3d 867, 894 (N.D. Cal. 2016); *accord Williams*, 552 F.3d at 938 (holding that "advertising which[,]
28  although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public'" is actionable).

1    DATED: December 14, 2021

2                                              **GUTRIDE SAFIER LLP**

3
                                               */s/Hayley Reynolds/s/*
4                                              SETH A. SAFIER (State Bar No. 197427)
                                               seth@gutridesafier.com
5                                              MARIE A. MCCRARY (State Bar No. 262670)
                                               marie@gutridesafier.com
6                                              HAYLEY A. REYNOLDS (State Bar. No. 306427)
                                               hayley@gutridesafier.com
7                                              100 Pine Street, Suite 1250
                                               San Francisco, CA 94111
8                                              Telephone: (415) 639-9090
                                               Facsimile: (415) 449-6469
9
                                               *Attorneys for Plaintiff*
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS - CASE NO.: 3:21-CV-6467