**GUTRIDE SAFIER LLP**
SETH A. SAFIER (State Bar No. 197427)
  seth@gutridesafier.com
MARIE A. MCCRARY (State Bar No. 262670)
  marie@gutridesafier.com
HAYLEY REYNOLDS (State Bar No. 306427)
  hayley@gutridesafier.com
KALI R. BACKER (State Bar No. 342492)
  kali@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOLLY BROWN, as individuals, on behalf of themselves, the general public and those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE J.M. SMUCKER COMPANY,<br><br>Defendant. | CASE NO. 4:21-CV-06467-HSG<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STAY DISCOVERY PENDING ORDER ON MOTION TO DISMISS**<br><br>Hon. Haywood S. Gilliam, Jr.<br><br>Hearing Date: May 12, 2022<br>Time: 2:00 p.m.<br>Place: Courtroom 2 |

## I. INTRODUCTION

Smucker's motion to stay discovery is frivolous and without merit. A key fact that Smucker omits from its brief is that the parties **already entered into an agreement for a limited stay**. Back in November 2021, the parties agreed to extend Smucker's deadline to respond to Plaintiff's discovery requests until 21 days after the Case Management Conference *to avoid motion practice on a motion to stay*. Unhappy with the deal that it struck, Smucker—without consulting Plaintiff's counsel or attempting to meet and confer—now moves the Court three months later for a stay to change the terms. The motion itself is procedurally improper because Rule 26(c) requires the motion to include "a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." Smucker did not bother to consult with Plaintiff's counsel before filing its motion so it fails to meet this threshold requirement. Even if it had, the motion is meritless since the parties' existing agreement precludes Smucker from making a "strong showing" of "good cause" to justify the stay.

Smucker's request for a stay is also meritless because its motion to dismiss is unlikely to be dispositive. Smucker makes much of the fact that it asserts 11 defenses in its motion, but only one defense—preemption—has the potential (although extremely limited) to affect the entire case. Smucker's chances of succeeding on preemption are slim. Since the remainder of Smucker's arguments do not affect the case in its entirety, the Court should deny the stay.

## II. BACKGROUND

Plaintiff filed suit on August 20, 2021 alleging that Smucker's nitrogen-based front label protein claims are misleading in violation of state and federal law because its products consist of low quality proteins that are either indigestible or deficient in certain amino acids essential to human protein synthesis. *See* ECF 1. On September 14, 2021, the Court set the Initial Case Management Conference for November 23, 2021 which effectively required the parties to conduct their Rule 26(f) conference by November 2, 2021 (i.e., three weeks before the Initial Case Management Conference). *See* ECF 15.

On November 2, 2021, counsel for Plaintiff and counsel for Smucker met and conferred pursuant to Rule 26(f) via phone. *See* Declaration of Hayley Reynolds ("Reynolds Decl."), ¶ 3. After the call, discovery was open, and Plaintiff served written discovery via email on Smucker later that day. *Id*. at ¶ 4. The next day, the Court re-scheduled the Case Management Conference for March 10, 2022. *See* ECF 22.

Defendant's counsel informed Plaintiff's counsel following day that he would not accept service of the discovery requests via email. Reynolds Decl., ¶ 4. He claimed that discovery was not open because the parties had not finished conferring pursuant to Rule 26(f) since a draft Case Management Statement and "proposed discovery plan" had not been provided. Reynolds Decl., Ex. A. He also claimed that, should Plaintiff "press forward" with the discovery before the Case Management Conference, "we will be forced to move for a protective order and motion to stay discovery". *Id*.

In an effort to avoid motion practice, counsel for Plaintiff responded by offering to extend Defendant's deadline to respond to discovery in one of two proposed ways. *Id*. On November 5, 2021, counsel for Smucker accepted the deal, confirming that "we are amenable to having a response deadline extended to 21 days after the initial case management conference, currently scheduled for March 10, 2022." *Id*.

### III. ARGUMENT

**A. Smucker's motion is procedurally improper because it did not meet and confer in violation of F.R.C.P. 26(c).**

The Federal Rules of Civil Procedure do not provide for automatic or blanket stays of discovery when potentially dispositive motions are filed. *See, e.g.*, *In re Valence Tech. Sec. Litig.*, 1994 U.S. Dist. LEXIS 21948, at *4 (N.D. Cal. Nov. 18, 1994) (noting that "courts have not looked favorably upon granting a blanket stay of discovery pending resolution of a challenge to the legal sufficiency of a plaintiff's complaint"); *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990) ("Had the Federal Rules contemplated that a motion to dismiss under Fed. R. Civ. P. 12(b)(6) would stay discovery, the Rules would contain a provision to that effect. In fact, such a notion is directly at odds with the need for expeditious resolution of litigation.").

However, the Court may grant a stay pursuant to Rule 26(c) "for good cause shown." F.R.C.P. 26(c)(1)(A), (B). In order to file a motion under Rule 26(c), the motion "*must* include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." (emphasis added). Smucker's motion is dead on arrival since it filed its motion without first consulting Plaintiff's counsel or even attempting to meet and confer. Without satisfying the threshold meet and confer requirement plainly set forth in Rule 26(c), the motion is procedurally improper, and the Court cannot grant the relief requested.

### B. Smucker cannot satisfy its burden of making a "strong showing" of "good cause" because there is already an agreement for a limited stay.

"A party seeking a stay of discovery carries the heavy burden of making a 'strong showing' why discovery should be denied." *Gray*, 133 F.R.D. at 40 (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)). "The moving party must show a particular and specific need for the protective order, as opposed to making stereotyped or conclusory statements." *Id.* (citations omitted).

Smucker does not have a "particular and specific need" for the stay since the parties *already agreed to a stay*. Smucker argues that a stay is necessary to avoid "unnecessary burden and expense" (ECF 32 at 3). The current agreement accomplishes that; if it didn't Smucker would not have agreed to it. Under the parties' agreement, Smucker will not have to spend *any* time or effort responding to the discovery until *after* the Court hears argument on the motion to dismiss and takes the motion under submission. This is more than fair. After all, if the terms were truly unfair or prejudicial, Smucker could have rejected the deal. Instead, it took it.

Smucker's motion would fail even if there was not already an agreement in place since it relies on blanket assertions—without any facts—that the stay is necessary to avoid burdens and expense. As courts in this District observe, "[t]he expense of discovery alone does not amount to good cause to stay discovery based on [a party's] argument that they are likely to succeed on the pending motions and could therefore avoid unnecessary expenses." *Smith v. Levine Leichtman*

*Capital Partners, Inc.*, 2011 U.S. Dist. LEXIS 161425, at *8 (N.D. Cal. Feb. 11, 2011). Smucker accordingly does not have good cause for the stay.

   **C. A "preliminary peek" at the motion to dismiss indicates that the case will proceed, in its entirety.**

In considering motions to stay discovery pending a motion to dismiss, courts in the Ninth Circuit explain that "a stay of discovery should only be ordered if the court is convinced that a plaintiff will be unable to state a claim for relief." *Mendoza v. Amalgamated Transit Union Int'l*, 2018 U.S. Dist. LEXIS 48212, at *4 (D. Nev. Mar. 23, 2018) (internal quotation marks omitted); *see also Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir. 1981) (stating that a court may limit discovery "for good cause" and may stay discovery "when it is convinced that the plaintiff will be unable to state a claim for relief"). Under these cases, the Court must take a "preliminary peek" at the merits of the pending dispositive motion to assess whether a stay is warranted. *See Mendoza*, 2018 U.S. Dist. LEXIS 48212, at *5-7 (denying a motion to stay because "the Court is not convinced that Defendant's motion to dismiss will prevail on the issue of inadequately pled allegations of fraud").

A "preliminary peek" at the merits of Smucker's motion to dismiss reveals that it cannot dispose of this case. First, both this motion and Smucker's motion to dismiss continue to mischaracterize, and thus does not effectively challenge, Plaintiff's theory of liability. The theory is *not* that Smucker *must* state anything at all about protein on its front labels, as Smucker repeatedly argues. *See* ECF 20 at 9; ECF 32 at 5. Rather, Plaintiff's theory is that Smucker was prohibited from making the claims that it did put on its front labels because it is misleading in violation of parallel state and federal requirements. In particular, § 101.13(i)(3) prohibits any statement about the "amount or percentage of a nutrient" like protein on the front label if it is "false or misleading in any respect." Smucker's standalone, nitrogen-based claims are misleading because they fail to account for the product's poor quality protein, which is deficient in certain amino acids essential to human protein synthesis. The FDA has explicitly acknowledged in published guidance that stating "protein quantity *alone* can be *misleading* on foods that are of *low protein quality*." 58 Fed. Reg. 2079 at 2101-2 (emphases added).

All of Smucker's preemption arguments are contradicted by the regulations, depend on mischaracterizations of Plaintiffs' claims, or have been squarely rejected by other courts. Smucker first argues that its front label claims do not qualify as nutrient content claims. The regulations plainly disprove this point. Section 101.13(c) makes clear that information stated in the NFP is generally "not subject to the requirements" for nutrient content claims, **but** "[i]f such information is declared *elsewhere* on the label or in labeling, it is a nutrient content claim and *is subject to the requirements for nutrient content claims*." (emphasis added). Smucker has taken the protein quantity figure from the NFP and placed it on the front of its packaging, making it a nutrient content claim under § 101.13(c). To accept Smucker's argument that its front label claims are not nutrient content claims would effectively render § 101.13(c) meaningless, which this Court is powerless to do. *See Mont. Air Chapter No. 29, Ass'n of Civilian Technicians, Inc. v. Fed. Labor Relations Auth.*, 898 F.2d 753, 762 (9th Cir. 1990) ("A regulation cannot be susceptible to a construction that ignores or renders meaningless parts of its language.")

Second, it contends that Plaintiff alleges that "PDCAAS must be used for the front-label protein content statement" so her claims impose different requirements from those set by FDA. ECF 20 at 9; ECF 32 at 5. But, again, the premise is wrong. Plaintiffs' claims do not depend on Nature's Path making *any* alternative statement on the label. It was simply prohibited from making the claim it did. While PDCAAS is a potential option for making a non-misleading claim, other options are available, such as using some combination of both the nitrogen and PDCAAS methods (e.g., "10g total protein, 6g digestible protein"). Thus, the only requirement Plaintiff's claims impose is not to make misleading front label claims, a requirement that is identical under state and federal law.

Finally, courts, including the Ninth Circuit, have repeatedly rejected Smucker's other preemption argument, which is that 12-step testing is required at the pleading stage. *See Durnford v. MusclePharm Corp.*, 907 F. 3d 595, 603-4 (9th Cir. 2018); *Smith v. Allmax Nutrition, Inc.*, 2015 U.S. Dist. LEXIS 171897, *22 (E.D. Cal. Dec. 23, 2015); *Clay v. Cytosport, Inc.*, 2015 U.S. Dist. LEXIS 110447, at *8 (S.D. Cal. Aug. 19, 2015).

Most of Smucker's remaining arguments in its motion to dismiss relate to specific claims, and, thus, will not be dispositive of the entire case. *See, e.g., Mlejnecky v. Olympus Imaging America, Inc.*, 2011 U.S. Dist. LEXIS 16128, *19-*20 (E.D. Cal. Feb. 7, 2011) (collecting cases). For instance, the economic loss doctrine does not affect Plaintiff's claims under the CLRA, FAL or UCL. ECF 20 at 4. Similarly, even if punitive damages are not available, other forms of relief may be awarded. *Id*. at 7. Thus, even if the Court were to accept any of those arguments alone, a portion of the case will still survive. In such circumstances, a stay is not warranted. *See. e.g.*, *Pac. Lumber Co v. Nat'l Union Fire Ins. Co*, 220 F.R.D. 349, 351-52 (N.D. Cal. 2003) ("discovery proceeds" if a pending motion is not "potentially dispositive of the entire case, or at least dispositive on the issue at which discovery is directed.")

**D. The *Nacarino* decision does not change the outcome.**

Plaintiff anticipates that Smucker will point to the recent decision in *Nacarino v. Kashi Company* No. 21-cv-07036-VC, ECF No. 43 (N.D. Cal. Feb. 9, 2022)—the first case to find preemption on this issue in a host of other cases reaching the opposite result. Smucker will likely claim that *Nacarino* definitively establishes that the case is preempted. But *Nacarino*'s holding is untenable. It contradicts itself, published FDA guidance, and the structure of the regulations.

*Nacarino* contradicts itself because it acknowledged that front label claims like the ones Smucker makes on its labels "may well be 'misleading' in the colloquial sense" due to the way low quality proteins operate in the human body. *Id*. at 5. It nevertheless concludes that such claims could never be misleading in the "regulatory sense" of § 101.13(i)(3). According to the court, this is because § 101.9(c)(7) "authorizes" a manufacturer to state protein quantity via "the nitrogen-content method without quality adjustment . . . in the Nutrition Facts label" and "to hold otherwise would be to find that an FDA-approved protein measurement technique is inherently misleading." *Id.* at 6.

However, this exposes the second fundamental problem with *Nacarino*: it simply ignores that the FDA **has recognized** in official, published guidance that the nitrogen method **is misleading** in this very context, i.e., for low quality proteins. When promulgating section 101.9(c)(7)—the regulation on which *Nacarino* bases its holding—the FDA stated that "***protein***

*quantity alone can be misleading on foods that are of low protein quality.*" 58 Fed. Reg. 2079 at 2101-2 (emphases added). This is because the FDA knows that "different food protein sources are not equivalent in their ability to support growth and body protein maintenance." 56 Fed. Reg. 60366, § B. How the human body utilizes protein and whether that is accurately reflected in various protein measurement techniques is clearly within the FDA's "scientific expertise" and the district court should not have substituted its "judgment for that of the agency" on this particular point. *Friends of the Santa Clara River v. United States Army Corps of Eng'rs*, 887 F.3d 906, 924 (9th Cir. 2018).

This in turn leads to the third fundamental problem with *Nacarino*: it ignores that the FDA structured its regulations to account for the fact that a nitrogen-based quantity figure can be misleading. It did this both with respect to the regulations on how manufacturers must state protein in the nutrition facts panel (NFP), and on the types of nutrient content claims they can make on the front of their packages.

Indeed, the great irony of *Nacarino* is that it concludes that the NFP regulation on protein, section 101.9(c)(7), *authorizes* a manufacturer to state a nitrogen-based protein quantity figure *alone* on the front of its package when it explicitly *prohibits* a manufacturer from doing so in the NFP. That section provides that if a manufacturer is advertising a product on the basis of protein, it can no longer simply state a nitrogen based quantity figure in the NFP; instead, it *must* provide information on protein quality in the form of a percent daily value (%DV) for protein as calculated using the PDCAAS method and place that %DV *immediately adjacent* to the quantity figure. 21 C.F.R. § 101.9(c)(7)(i)-(iii). *Nacarino* downplays this aspect of the regulations, reasoning that the %DV "is not to remedy an otherwise misleading figure, but to supply protein-conscious consumers with information that gives them further assistance in deciding what to buy." *Nacarino* at 6. But that does not hold up. The FDA, again, explicitly stated when promulgating this requirement that the %DV was "to prevent [consumers] from being *misled* by information on *only the amount* of protein present" in the NFP. 58 Fed. Reg. 2079, 2102 (emphasis added).

As for the front of pack regulations, it is no coincidence that the FDA has officially stated that "protein quantity alone can be misleading", and then prohibited manufacturers from stating the "amount or percentage" of a nutrient on the front if it is "false or misleading in any respect." 21 C.F.R.§ 101.13(i)(3). The clear implication is that, just like stating protein quantity alone is prohibited in the NFP because it is misleading, so too is stating protein quantity alone on the front of the package on a low quality protein product touting its protein.

Moreover, "[a] regulation cannot be susceptible to a construction that ignores or renders meaningless parts of its language" but the *Nacarino* court's conclusion that any nutrient quantity supported by an FDA-approved testing methodology is automatically authorized as a nutrient content claim renders several of the front of pack regulations meaningless. *Mont. Air Chapter No. 29, Ass'n of Civilian Technicians, Inc. v. Fed. Labor Relations Auth.*, 898 F.2d 753, 762 (9th Cir. 1990). If *Nacarino*'s interpretation were true, then any information from the nutrition facts panel would automatically qualify as a permissible nutrient content claim, because all of those figures are necessarily supported by an FDA-approved testing methodology. But the FDA went out of its way in § 101.13(c)—which *Nacarino* does not discuss—to make clear that information stated in the NFP does ***not automatically qualify*** as a nutrient content claim and can be stated on the front package ***only*** if it meets the other nutrient content claim requirements such as § 101.13(i)(3), which, in turn, clearly contemplates that the "amount of a nutrient" can sometimes be "misleading" at least in some respects. This is why the Ninth Circuit, in interpreting these very same regulations, has explicitly held that "a requirement to state certain facts in the nutrition [facts] label is not a license to make that statement elsewhere on the product." *Reid v. Johnson & Johnson*, 780 F.3d 952, 960 (9th Cir. 2015).

*Nacarino* writes off *Reid* and the similar *Hawkins v. Kroger Co.*, 906 F.3d 763, 767 (9th Cir. 2018) on the grounds they both state the "exception, not the rule." *Id*. at 7. Even if that were true generally, *Nacarino* ignores that this case too presents such an "exception." This case centers ***specifically*** on products made up of low quality proteins. Plaintiff's position is ***not*** that every nitrogen-based front label claim is inherently misleading. When a product consists of high quality proteins, nitrogen testing can provide an accurate, non-misleading picture of protein

content. The problem arises when a product consists of low-quality proteins. In that scenario, nitrogen testing yields inflated numbers. It suggests that consumers will receive all the protein claimed, even though that is simply not true. Here, over half the protein is useless to humans. While the raw protein quantity may be true in the abstract, it is fundamentally misleading when stated without any context as to its quality. Moreover, just as in *Reid* and *Hawkins*, where the FDA had issued guidance calling into question front of pack "no trans fat" claims, the FDA here has also issued guidance explicitly recognizing that protein quantity alone can be misleading on low quality protein products. In other words, The FDA recognizes the problem and it structured its regulations to address it both in the NFP through § 101.9(c)(7)(i)-(iii) and on the front of the package through §§ 101.13(c) and 101.13(i)(3).

*Nacarino* is not the first opinion on the preemption of claims like Plaintiff's—the first four courts reached the *opposite* conclusion. *See Minor v. Baker Mills, Inc.*, 2020 WL 11564643, *2–3 (N.D. Cal. Nov. 12, 2020); *Ulrich v. Probalance, Inc.*, 2017 WL 3581183, *5 (N.D. Ill. Aug. 18, 2017); *Porter v. NBTY, Inc.*, 2016 WL 6948379, *5–6 (N.D. Ill. Nov. 28, 2016); *Gubala v. CVS Pharmacy, Inc.*, 2016 U.S. Dist. LEXIS 32759 (N.D. Ill. Mar. 15, 2016). Those decisions recognize, as does *Nacarino* "in the colloquial sense", that nitrogen-based protein claims can be misleading for products with low-quality proteins. The better, more reasoned approach is to follow those decisions since *Nacarino* concedes that is plausible that such claims are, in fact, misleading.

Ultimately, *Nacarino* flipped the parties' burdens. There is a strong presumption against preemption. *See Ctr. for Competitive Politics v. Harris*, 784 F.3d 1307, 1318 (9th Cir. 2015). Rather than focusing on the only true question (i.e., whether Plaintiff plausibly alleged the front labels claims were misleading), *Nacarino*, instead, *presumed* the claims were preempted because FDA generally allows for nitrogen testing.

**IV.   CONCLUSION**

The Court should deny Smucker's motion for a stay.

Dated: February 15, 2022

**GUTRIDE SAFIER LLP**

*/s/ Seth A. Safier /s/*
SETH A. SAFIER (State Bar No. 197427)
  seth@gutridesafier.com
MARIE A. MCCRARY (State Bar No. 262670)
  marie@gutridesafier.com
HAYLEY REYNOLDS (State Bar No. 306427)
  hayley@gutridesafier.com
KALI R. BACKER (State Bar No. 342492)
  kali@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiff*