UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOLLY BROWN,<br><br>   Plaintiff,<br><br> v.<br><br>THE J.M. SMUCKER COMPANY,<br><br>   Defendant. | Case No. 21-cv-06467-HSG<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 20 |

  Pending before the Court is Defendant J.M. Smucker Co.'s motion to dismiss, briefing for which is complete. *See* Dkt. No. 20 ("Mot."), 27 ("Opp."), 28 ("Reply").  At the Court's request, both parties submitted supplemental briefs addressing the relevance of FDA guidance published in January 2022. *See* Dkt. Nos. 38 ("Pl. Suppl. Br."), 39 ("Def. Suppl. Br.").[1]  The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). For the reasons detailed below, the Court **GRANTS** the motion.

**I. BACKGROUND**

 **A. Factual Background**

  Plaintiff Molly Brown is a consumer in California who alleges that she was deceived into buying Defendant's products that contain protein content claims on the front of the product packages ("Products"). *See* Dkt. No. 1 ¶¶ 6, 11, 13-15; *see also id.* Exh. B. Plaintiff alleges that the labels on the front of the packages falsely inflate the amount of protein in the Products, and argues that amino acid content testing and Protein Digestibility Corrected Amino Acid scoring

---

[1] Defendant notified the Court of the FDA guidance on January 27, 2022, shortly after it was issued. *See* Dkt. No. 30. Plaintiff's objection that Defendant should have sought leave to file a notice of supplemental authority since briefing had concluded is overruled, as the Court gave both parties an opportunity to address the guidance. *See* Dkt. No. 31.

("PDCAAS") both show lower protein content levels than the packaging advertises. *See id.* ¶ 2-4.

As an example, Plaintiff points to Defendant's product Smucker's Peanut Butter & Strawberry Uncrustables Sandwich. *Id.* ¶ 14. The front of the box states that a serving contains 6 grams of protein. *Id.* ¶ 14-15. Plaintiff alleges that an amino acid content test showed only 5 grams of protein per serving, less than the front label advertises. *Id.* ¶ 15. Plaintiff further alleges that adjusting the protein content based on PDCAAS, which accounts for protein digestibility, a serving of the sandwich only provides 2.5 grams of protein. *See id.* ¶¶ 4, 15.

Plaintiff argues that the PDCAAS method should be used to evaluate the protein content of Defendant's Products because it measures the amount of protein that is actually useful to the consumer. *See id.* ¶¶ 4, 34, 40. According to Plaintiff, human digestion of protein is a complex biological process, and some sources of protein are more easily consumed and used than others. *Id.* ¶¶ 16-27. Plaintiff argues that "Defendant's protein representations on the front package are false and misleading because they broadly tout protein quantity while ignoring that the poor quality proteins in the Product and the fact that the Products will provide far less useable protein than claimed." *Id.* ¶ 34.

On this basis, Plaintiff brings causes of action under California's Consumer Legal Remedies Act (Cal. Civ. Code § 1750, *et seq.*), False Advertising Law (Cal. Bus. & Prof. Code § 17500, *et seq.*), and Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*) as well as for common law fraud, deceit and/or misrepresentation and for unjust enrichment.

### B. Regulatory Background

The FDA regulates what a manufacturer can (and sometimes, must) include on food packaging. As is relevant here, under 21 C.F.R. § 101.9, packages must contain a Nutrition Facts panel—the box often found on the back or side of the packaging that lists the amounts of relevant nutrients. When it comes to protein, the Nutrition Facts panel must include "the number of grams of protein in a serving, expressed to the nearest gram." *Id.* § 101.9(c)(7). Manufacturers "may" calculate the amount of protein in their product by multiplying the product's nitrogen content by a factor of 6.25 (the "Nitrogen Method"). *See id.* ("Protein content may be calculated on the basis of the factor 6.25 times the nitrogen content of the food . . . ."); *see also Nacarino v. Kashi Co.*,

2

No. 21-CV-07036-VC, 2022 WL 390815, at *1 (N.D. Cal. Feb. 9, 2022) ("The more protein that a product has, the more nitrogen there will be. Thus, the amount of protein in a product can be estimated by multiplying its nitrogen content by some factor (6.25, as it turns out).").

Nutrient information included elsewhere on product packaging, *i.e.* nutrient content claims, cannot "implicitly characterize the level of the nutrient in the food" and cannot be "false or misleading in any respect." *See* 21 C.F.R. § 101.13(i)(3). If the packaging contains statements about the product's protein content outside the Nutrition Facts panel, then the manufacturer must amend the Nutrition Facts panel to include a "statement of the corrected amount of protein per serving," expressed as a "Percent of Daily Value." 21 C.F.R. § 101.9(c)(7)(i). This figure takes the "actual amount of protein" from the Nutrition Facts panel and adjusts it for digestibility based on PDCAAS. *Id.* § 101.9(c)(7)(ii).i).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

Federal Rule of Civil Procedure 9(b) heightens these pleading requirements for all claims

that "sound in fraud" or are "grounded in fraud." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (citation omitted); Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). The Ninth Circuit has interpreted Rule 9(b) to require that allegations of fraud are "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993) (quotation marks and citation omitted).

In short, a fraud claim must state "the who, what, when, where, and how" of the alleged conduct, *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997), and "set forth an explanation as to why [a] statement or omission complained of was false and misleading." *In re GlenFed, Inc. Secs. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as stated in Ronconi v. Larkin,* 252 F.3d 423, 429 & n.6 (9th Cir. 2001). "Malice, intent, knowledge and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

## III.     DISCUSSION

Plaintiff alleges that Defendant's Product packaging violates § 101.13, which prohibits nutrient content claims that are false and misleading. 21 C.F.R. § 101.13(i)(3).[2] As an initial matter, Defendant contends that its front labels stating the quantity of protein, such as "6 grams Protein," are not nutrient content claims because they do not "characterize" the protein levels. *See* Mot. at 8-9. However, Defendant's argument fails under a plain reading of the regulations. Under 21 C.F.R. § 101.13(c), information that can be included in the Nutrition Facts panel under 21 C.F.R. § 101.9 "is a nutrient content claim and is subject to the requirements for nutrient content claims" if "such information is declared elsewhere on the label or in labeling." The packages at issue repeat on the front of the package the protein content listed in the Nutrition Facts panel. The protein content claims on the front labels are therefore nutrient content claims subject to § 101.13.

---

[2] Defendant challenges Plaintiff's standing to bring her claims, alleging that she lacks standing for unpurchased products and fails to allege a particularized and concrete injury, that she paid a price premium, and imminent risk of future harm. Mot. at 14-20. This Order need not reach the standing questions, however, because even assuming Plaintiff has standing, which the Court does not now decide, Plaintiff fails to plead facts sufficient to establish a claim that is plausible on its face.

This Court recently addressed a practically identical claim alleging violations of § 101.13 in *Brown v. Nature's Path Foods, Inc.*, Case No. 21-cv-05132-HSG, 2022 WL 717816 (N.D. Cal. March 10, 2022).[3] As the Court explained in *Nature's Path*, although the FDA regulations themselves do not specify how manufacturers must calculate the amount of protein in a nutrient content claim, the FDA has issued agency guidance clarifying that protein content claims may be based on "either of the methods mentioned" in section 101.9(c)(7)—that is, the "nitrogen method" or the "protein digestibility-corrected" figure. *Industry Resources on the Changes to the Nutrition Facts Label*, U.S. Food & Drug Administration (content current as of Aug. 9, 2022), https://www.fda.gov/food/food-labeling-nutrition/industry-resources-changes-nutrition-facts-label; *see Nature's Path*, 2022 WL 717816, at *6-7.[4]

In other words, FDA regulations do not require protein content claims on a package's front label to be calculated using amino acid content testing or to be adjusted for digestibility. *Nature's Path*, 2022 WL 717816, at *7; *see also Nacarino*, 2022 WL 390815 at *5 ("Given the FDA's express approval of the nitrogen-content method and failure to require manufacturers to adjust for protein quality when stating the amount of protein in the nutrition label, it does not make sense to read the regulations as barring manufacturers from making identical statements elsewhere on their packaging."); *Chong v. Kind LLC*, Case No. 21-cv-04528-RS, 2022 WL 464149, at *3 ("[A] correct reading of the regulations establishes that producers may state grams of protein even outside the Nutrition Facts panel calculated by the nitrogen method, and without adjustment for digestibility."). By arguing that the nutrient content claim must be calculated using one of Plaintiff's preferred methods, Plaintiff attempts to use California state law to impose requirements that the FDA does not, which violates the FDCA's preemption provision. *Nature's Path*, 2022 WL 717816, at *7; *see* 21 U.S.C. § 343-1(a)(5); *see also Mee v. IA Nutrition, Inc.*, No. 14-CV-

---

[3] Like Plaintiff here, the plaintiff in Nature's Path alleged that the defendant's front packaging labels advertising a specific amount of protein per serving were false and misleading because (a) amino acid content testing showed a lower level of protein and (b) the protein content claim was not adjusted for digestibility. *Nature's Path*, 2022 WL 717816, at *6-7.

[4] Whether or not the FDA's interpretation of its regulations warrants deference, the Court finds the guidance persuasive in explaining the relationship between § 101.13(i)(3) and § 101.9(c)(7). *Nature's Path*, 2022 WL 717816, at *6 n.7; *see also Nacarino*, 2022 WL 390815 at *4.

5006-MMC, 2015 WL 2251303, at *4 (N.D. Cal. May 13, 2015) ("[W]here, as here, an FDA regulation provides that the question of compliance must be determined using the method specified therein, a state law claim that seeks to establish a violation of such regulation by a different methodology is preempted.").

Accordingly, Plaintiff's claims are preempted, and Defendant's motion to dismiss is granted. Because the defect lies in the legal theory, not the factual allegations, the dismissal is without leave to amend.

## IV. CONCLUSION

The Court **GRANTS** Defendant's motion to dismiss with prejudice. The Clerk is directed to close the case and enter judgment in favor of Defendant.

**IT IS SO ORDERED.**

Dated: 8/12/2022

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge